Charles Koch, Respondent, v. Otis Elevator Company, Appellant.

First Department, May 17, 1960.

*William F. McNulty* of counsel (*Hampton & Mahoney,* attorneys), for appellant.

*Herbert L. Fine* of counsel (*Elmer Fried,* attorney), for respondent.

BERGAN, J. Defendant Otis Elevator Company undertook by written agreement with the Emerson School to service an automatic elevator in premises 12 East 96th Street. The agreement required defendant to " use all reasonable care to maintain the elevator[s] in proper and safe operating condition " and to " regularly and systematically examine, adjust, lubricate as required, and if, in our judgment, conditions warrant, repair or replace " certain enumerated parts.

Plaintiff was the superintendent of the building in the employ of Emerson School and lived in the premises. On the evening of June 22, 1954 the elevator stopped between the first and second floors while plaintiff was operating it. He rang the alarm bell, but was unable to attract attention and remained

overnight in the elevator. In the morning he succeeded in getting out, but in doing this he reactivated or exacerbated a prior injury which had been sustained in an automobile accident.

Plaintiff has had a recovery in the City Court against the defendant elevator company on the theory of negligence; the judgment has been affirmed at Appellate Term; but in our view of the record a case of negligence has not been made out and defendant is entitled to judgment.

No such ownership or exclusive control of the elevator or its operating mechanism has been attributed to the defendant, as would permit application of the doctrine of *res ipsa loquitur*. Thus cases such as *Beinhocker* v. *Barnes Development Corp.* (296 N. Y. 925), where a part of the equipment controlling the elevator, the failure of which caused the accident, was the property of the maintenance company which by contract retained control of such equipment; or *Ames* v. *Watson Elevator Co.* (303 N. Y. 732) where the safety device which failed remained under control of the elevator company, are not decisive in the situation in the case before us. The Court of Appeals decided *Ames* on a pleading alleging exclusive control of the equipment in the elevator service company; but on the actual trial a factual situation arose very similar to the one presented here; and the complaint against the elevator service company was dismissed at the end of the proof. (*Ames* v. *Jalpur Realty Corp.*, 20 Misc 2d 656.)

Nor was plaintiff using the elevator relying on specific and affirmative assurance by defendant after making adjustments or repairs that it would operate without stopping, so as to bring the case within *Kelly* v. *Watson Elevator Co.* (309 N. Y. 49) or *Wroblewski* v. *Otis Elevator Co.* (9 A D 2d 294).

The usual rule, therefore, guides the determination of this case, that plaintiff must factually demonstrate the negligence which he attributes to defendant. (*Foltis, Inc.* v. *City of New York*, 287 N. Y. 108; *Manley* v. *New York Tel. Co.*, 303 N. Y. 18; *Stafford* v. *Sibley, Lindsay & Curr Co.*, 280 App. Div. 495.)

Plaintiff did not show what caused the elevator to stop between the first and second floors on June 22. He showed merely that it stopped. Defendant's records disclosed that when defendant's mechanic was called on June 23 he found " Mainline fuse open — no cause ". The term " fuse open " was explained in the record as meaning " fuse was blown ".

It was abundantly demonstrated that a blown mainline fuse would stop the elevator. For such a fuse blowout there were shown to be several causes; but nothing in the record suggests any negligent attribution of this blowout to defendant or any knowledge that it was likely to occur.

Although plaintiff was not a party to the maintenance contract and hence was not in contractual "privity" with defendant, the negligent performance of the contract to plaintiff's injury would be actionable. (*Kelly* v. *Watson Elevator Co., supra*; *Wisner* v. *Harmas Holding Corp.*, 1 A D 2d 957.)

But negligence needs demonstration. It must be shown either that defendant had prior knowledge of the condition which caused this stoppage and failed to act with reasonable care to correct it; or that it failed to use reasonable care to discover, and then to correct, a condition which ought to have been found.

The elevator was installed in 1917, over 35 years before this occurrence on June 22, 1954. Defendant did not undertake to see to it that the elevator would never stop; and its contractual obligation would not, under the facts in this record, impose a liability in favor of the direct party to the service agreement. Its obligation to the plaintiff not to act negligently to his injury was an obligation of somewhat narrower range.

The failure of the elevator on June 22 must be shown by plaintiff to have been due to some specific cause which in the exercise of reasonable care defendant should have found and corrected. No such cause has been demonstrated; essentially all that is shown by plaintiff is the isolated fact the elevator stopped.

Plaintiff's proof showed that the elevator stopped several times in a short period before June 22 and that defendant's mechanic had made repairs. But plaintiff himself offered defendant's "callback" record in evidence, that is, the record of special service calls for this elevator; and these showed the last such call to have been on May 24, a month before this occurred and that "paint" had been "cleaned off" the third-floor door "lock contact".

The defendant's mechanic who did this job testified that the elevator would not run because he found the door contact "was smeared with paint. Now, I removed the paint from the door contact and the elevator was then operable".

Neither this nor any other proof in the record suggests that defendant knew or should have known and corrected the condition which caused the elevator to stop on June 22. Indeed, a city elevator inspector testified that on June 18 he spent almost an hour examining "the machine, the running gears and the cables, the doors" and "I found the elevator okay."

The order and judgment of the Appellate Term and of the City Court should be reversed, on the law and on the facts, with costs in this court and in the Appellate Term, and judgment directed for defendant, with costs.

468

BOTEIN, P. J., BREITEL, M. M. FRANK and STEVENS, JJ., concur.

Determination of the Appellate Term so appealed from and the judgment of the City Court unanimously reversed, on the law and on the facts, with costs in this court and in the Appellate Term to the appellant, and judgment is directed to be entered in favor of defendant dismissing the complaint, with costs.