■ VILMA BURGESS et al., Respondents, v OTIS ELEVATOR COMPANY, Appellant and Third-Party Plaintiff-Appellant. MORGAN GUARANTY TRUST COMPANY OF NEW YORK, Third-Party Defendant-Respondent.—Judgment, Supreme Court, New York County (Alfred M. Ascione, J.), entered June 21, 1984, which awarded plaintiff Vilma Burgess $823,240 and Joseph Burgess $194,240 on a jury verdict against defendant and third-party plaintiff Otis Elevator Company, modified, on the law and the facts, and a new trial ordered solely on the issue of damages with respect to plaintiff, Joseph Burgess, unless Joseph Burgess, within 20 days of service of a copy of the order to be entered herein, with notice of entry upon his attorney, serves and files in the office of the clerk of the trial court a written stipulation consenting to a reduction of the verdict in his favor to $50,000, and to the entry of an amended judgment in accordance therewith, and the aforesaid judgment is otherwise affirmed, without costs or disbursements.

On September 7, 1978, plaintiff Vilma Burgess boarded elevator No. 13 on the 19th floor of Morgan Guaranty Trust's office building located at 15 Broad Street in lower Manhattan. Frank Teague, another Morgan Guaranty employee, was on the elevator. Both had boarded it without difficulty. They rode down to the 18th floor. When Mrs. Burgess exited, she stumbled and fell to the floor. While lying on the ground she saw that the elevator had landed about five inches above floor level. Mr. Teague, who left the elevator to assist her, noticed that it was 2 to 4 inches above floor level.

Plaintiff commenced this action, joined by her husband who sued for loss of consortium, against Otis Elevator to recover for the back injury she sustained as a result of her fall. Defendant Otis Elevator had a service contract with Morgan Guaranty Trust, whereunder it was obligated to maintain the elevators in proper and safe operating condition, systematically inspect them, and repair any defective parts. It was also responsible for keeping a mechanic on the premises during regular working hours, and providing "call back service" in response to complaints at all other times. Issue was joined, and defendant Otis Elevator impleaded Morgan Guaranty.

The court, at Trial Term, instructed the jury on negligence and the doctrine of res ipsa loquitur. Defendant and Morgan Guaranty objected to the use of a res ipsa instruction. In response to interrogatories, the jury determined that defendant Otis Elevator was negligent, and that its negligence was the proximate cause of the accident. The jury rendered a verdict for plaintiff Vilma Burgess, in the amount of $890,000, and for her husband in the amount of $210,000. The jury

found that plaintiff was 7½% contributorily negligent, reducing the awards to $823,240 and $194,240, respectively. It also apportioned 25% liability to Morgan Guaranty on the third-party complaint. Both Otis Elevator and Morgan Guaranty moved to set aside the verdict. The trial court granted Morgan Guaranty's motion. This appeal by defendant Otis Elevator ensued.

Defendant challenges, *inter alia,* the sufficiency of plaintiffs' prima facie, and the propriety of the jury instruction on res ipsa loquitur. These points are addressed, seriatim, below.

The trial court properly denied defendant's motion to set aside the verdict, and found the verdict in accord with the evidence. Contrary to defendant's contention, there was circumstantial evidence of a probative nature associating the accident with prior elevator malfunction. The jury here could have found that defendant had actual or constructive notice of the defective condition from the testimony of William Heinbokel, Morgan Guaranty's building manager, that there had probably been complaints that some of the automatic elevators in the B bank (which contained elevator No. 13) misleveled at a given floor by more than two inches; and that he thought there had been complaints that some of the B bank elevator cars did not platform correctly on the 18th floor. Mr. Heinbokel's testimony, coupled with defendant's undertaking to perform all inspection and maintenance, was sufficient for the jury to infer negligence. *(Rogers v Dorchester Assoc.,* 32 NY2d 553, 561.) In a case similar to the present one, *Smith v Jay Apts.* (33 AD2d 624), the Third Department held that evidence of one elevator malfunction prior to the accident was sufficient to sustain the elevator company's liability.

The jury could also have found from the testimony of plaintiff's expert, Stanley Fein, that defendant's negligence in fulfilling its maintenance contract caused the accident. He testified that the procedures Warren Robinson, the mechanic assigned to full-time duty at the premises, regularly followed, according to his deposition testimony, i.e., riding each elevator once every three weeks and checking with the elevator starters for complaints, were not good custom and practice. Mr. Fein testified that a four-inch misleveling could have been caused by various types of equipment failure, would be very unlikely to spontaneously correct itself, and would have been discovered on reasonable inspection.

We conclude that plaintiff adduced sufficient evidence of the three elements necessary to invoke the doctrine of res ipsa loquitur. In New York, the doctrine has three prerequisites:

(1) the event must be of a kind that does not ordinarily occur in the absence of someone's negligence, (2) it must be caused by an instrumentality within the exclusive control of the defendant, and (3) the plaintiff must not have effected the happening of the event by any voluntary action. *(Corcoran v Banner Super Mkt.,* 19 NY2d 425, 430.) In a case on point with the present one, *Smith v Jay Apts. (supra),* the Third Department found that proof of a two-foot misleveling of an automatic elevator warranted submission of the case to the jury on the theory of res ipsa loquitur. Similarly, in a case involving the six-inch misleveling of an automatic elevator, *Peters v Troy Hous. Auth.* (108 AD2d 999), the record indicates the jury was charged res ipsa loquitur. The Third Department affirmed the judgment in favor of the plaintiff. The memorandum decision does not reflect any evidence of prior malfunction.

We find that Mr. Fein's testimony was sufficient to establish both a prima facie case of negligence and the first element of res ipsa loquitur. Mr. Fein's testimony clearly raised an inference that the accident stemmed from defendant's negligence in servicing the elevator. Moreover, when read together, the testimony of both Mr. Fein and Mr. Robinson established that the misleveling of elevator No. 13 was an event of a kind which would not ordinarily occur in the absence of negligence. Both he and Mr. Robinson testified that a 2- to 5-inch misleveling was substantially beyond the acceptable tolerance, and that the possible causes were various failures in the elevator mechanisms and equipment, i.e., broken load weighting switches, wires, contacts, selector work bearings or level rings. Defendant, however, proffered no conclusive evidence of reasonable care in inspection and maintenance designed to prevent such misleveling problems. Robinson testified at trial that he visually checked the controller and selector equipment in a given bank of elevators every 5 to 6 weeks, rode a given elevator about once every three weeks, and spoke with the elevator starter on duty about any complaints. He failed to indicate how frequently he checked the circuit board in the motor room and other aspects of the elevator mechanism which controlled the elevator leveling, the main machine, the generator, the weight load regulator, and the relay switches. Indeed, the call back records, albeit incomplete, do not reflect that defendant ever serviced any elevator for misleveling problems. Robinson stated that he first learned of plaintiff's accident at his deposition several years later. Plaintiff clearly established that the instant malfunction was probably due to a serious defective condition, ordinarily discoverable upon

reasonable inspection, and not an unforeseeable and spontaneous equipment malfunction, such as a burnt wire. This is especially so given Fein's uncontroverted testimony that such a malfunction would have been very unlikely to self-correct.

The second prerequisite, exclusive control of the instrumentality, is shown, given Morgan Guaranty's reliance upon defendant's expertise to inspect and maintain the intricate devices of the elevator in reasonably safe operating condition, pursuant to the service agreement.

" 'Exclusivity' is a relative term, not an absolute. 'The logical basis for [the control] requirement is simply that it must appear that the negligence of which the thing speaks is probably that of defendant and not of another.' (2 Harper and James, [The Law of Torts], § 19.7, p 1085)." (*Weeden v Armor Elevator Co.*, 97 AD2d 197, 206.)

As to the third element, the record is devoid of evidence that plaintiff had any control over the misleveling of the elevator. (*Weeden, supra,* pp 205-206.) (*Compare, Feblot v New York Times Co.*, 32 NY2d 486, 495-496.) The doctrine is also applicable in view of defendant's greater access to information. By virtue of its inspection duties, defendant is in a much better position than plaintiff to prove the precise cause of elevator No. 13's malfunction. Robinson's testimony at his deposition and at trial that he had destroyed his notes reflecting checks made with respect to misleveling problems is significant in this regard.

Defendant's reliance upon *Koch v Otis Elevator Co.* (10 AD2d 464) and *Birdsall v Montgomery Ward & Co.* (109 AD2d 969) is misplaced. Those cases are inapposite, since defendants' records in *Koch* and *Birdsall* established the greater probability that the accidents were caused by unforeseeable events, a blown fuse and foreign objects, respectively. In addition, the defendant in *Birdsall* showed that it exercised reasonable care to discover any defective condition in the escalator on previous occasions, since it adhered to a weekly inspection schedule. On the other hand, defendant here neither demonstrated the greater probability that a burnt wire or other unforeseen malfunction in elevator No. 13, rather than negligence, caused the accident, nor made a showing that it had exercised reasonable care to discover and repair promptly prior misleveling problems in any elevator.

Finally, the damages awarded Joseph Burgess appear to us to be excessive to the extent indicated. Concur—Sandler, J. P., Rosenberger and Ellerin, JJ.

Sullivan and Carro, JJ., dissent in a memorandum by Sullivan, J., as follows: Plaintiff, Vilma Burgess, an employee of Morgan Guaranty, suffered a herniated disc when she stumbled and fell as she left an automatic elevator which had stopped four or five inches above floor level at Morgan's 15 Broad Street building. The jury returned a verdict in her favor in the sum of $823,240, and awarded her husband $194,240 for loss of services. The court submitted the case to the jury on a theory of negligence and charged the doctrine of res ipsa loquitur. Otis Elevator, which, pursuant to contract with Morgan, serviced and maintained the building's elevators, specifically objected to the res ipsa charge, as did Morgan. Liability was apportioned at 7½% against plaintiff and her husband, and 92½% against Otis. On Otis's third-party claim the jury apportioned 25% of the liability against Morgan. Trial Term denied Otis' motion to set aside the verdict against it, finding the verdict "in accord with the testimony and not contrary to the weight of the evidence", but did set aside the verdict on its third-party claim and dismissed the third-party complaint.

The evidence establishes that plaintiff entered the elevator without difficulty on the 19th floor to descend to the 18th floor. Frank Teague, a fellow Morgan employee, had entered the elevator on the 21st floor, again without difficulty, and was on the elevator when plaintiff entered. At the 18th floor the elevator "misleveled", stopping about "two or four inches" above the floor. As a result plaintiff stumbled as she exited and fell to the floor.

Otis, which under its service contract was responsible for the inspection of the elevators, had a mechanic and helper on the premises during working hours, and was subject to call when the mechanic was off duty. In his deposition read in evidence the building manager testified that during his 12 years in the building there had been occasional complaints of misleveling, but his testimony did not reveal any problems with the particular elevator involved in this incident. In another deposition read at trial the resident elevator mechanic testified that during the four years he had been tending the elevators at 15 Broad Street prior to the accident he could not recall any misleveling problem with the elevator in question. He also testified that he did not repair the elevator after the accident, and, indeed, first learned of the accident several years later. He testified that the acceptable tolerance for misleveling was ¼ inch, and that adjustments would be made if the misleveling exceeded that measurement. He also

stated that every week he would inspect the mechanical devices in at least one elevator bank, ride the elevators, and confer with the starter on the ground floor.

Plaintiffs' expert testified that the acceptable tolerance for misleveling was ½ inch, and while he could not pinpoint the cause of the misleveling at the time of the accident, he did recite several possible causes, including a defective relay switch, a defective weight load regulator, a burned-out contact, and burned or loose wires. Plaintiffs' expert also testified that a misleveling problem of the kind that occurred here is not one that takes place spontaneously. Notwithstanding his testimony that he could not identify the cause of the misleveling, he opined that reasonable inspection would have discovered the condition. He further found Otis' maintenance procedures deficient.

Despite the absence of any evidence that Otis had ever received a complaint about the elevator in question so as to put it on notice that the elevator was malfunctioning, or of any direct evidence that the elevator had, in fact, ever misleveled prior to the accident, I believe, on the basis of the testimony of plaintiff's expert, that sufficient circumstantial evidence of negligence was shown to warrant submission of the case to the jury. This was not a case, however, for application of the res ipsa doctrine. In this connection the jury was specifically charged that, as in the case of a falling billboard, where the inference of negligence could be drawn against its owner, the inference of negligence could be drawn against Otis. This was error since Otis could not be found liable simply because the elevator misleveled.

It is well settled that the mere happening of an accident and resultant injury does not permit the inference of negligence. *(Eaton v New York Cent. & Hudson Riv. R. R. Co.,* 195 NY 267.) While a plaintiff may, in the absence of direct evidence of negligence, establish circumstances which justify the inference of negligence, "the circumstances must be such as to indicate negligence, and there must be more than mere speculation, guess or surmise [citations omitted]." *(Manley v New York Tel. Co.,* 303 NY 18, 25.) The doctrine of res ipsa loquitur is but a species of the rule of circumstantial evidence that permits a jury, given evidence of sufficient probative weight, to infer negligence where no direct evidence of negligence exists. *(Cooke v Bernstein,* 45 AD2d 497, 499, citing *Zaninovich v American Airlines,* 26 AD2d 155, 157.) The conditions necessary for the applicability of res ipsa loquitur are: " '(1) the event must be of a kind which ordinarily does

not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' " *(Corcoran v Banner Super Mkt.,* 19 NY2d 425, 430, citing Prosser, Torts § 39, at 218 [3d ed].) The law is clear that "evidence showing a probability that the accident could not have occurred in the absence of negligence must be adduced before the res ipsa loquitur doctrine will be applied" *(Rodriguez v State of New York,* 50 AD2d 985, 986; citations omitted).

Thus, plaintiff was not entitled to a res ipsa charge merely by virtue of the elevator's misleveling. While the rapid fall of a elevator several floors when the defendant was aware of the need for repair of the speed governor *(see, e.g., Mallor v Wolk Props.,* 63 Misc 2d 187) is an appropriate case for the application of res ipsa loquitur, the misleveling here is not. Also inapposite is *Weeden v Armor Elevator Co.* (97 AD2d 197), upon which plaintiff relies. There, the elevator passed the desired floor, ascended to the top of the shaft, hit something, and started shaking. The court found res ipsa applicable because "the erratic behavior of elevator number one was neither an ordinary nor a natural experience * * * but, rather * * * constituted an event which would not ordinarily occur were due care exercised in that vehicle's manufacture and maintenance" *supra,* p 205; citations omitted). The notion, implicit in Trial Term's charge on res ipsa, that the jury could find that the elevator would not have misleveled on one occasion but for negligence on the part of the maintenance and service contractor, requires a perfection in machinery that cannot be assured even by the wonders of the technological age. Here, the elevator had only seconds before leveled properly at both the 21st and 19th floors. Thus, while Otis may be held liable in negligence if it was on notice of a prior misleveling of the type here involved—and constructive notice of such a condition was circumstantially established by plaintiff's expert—absent acceptance of such proof it cannot be found to be negligent for whatever happened to the mechanism in the very short interval before plaintiff entered the elevator. The court's res ipsa charge permitted just such a finding.

In the principal case upon which plaintiff relies, *Rogers v Dorchester Assoc.* (32 NY2d 553), the court noted that the door which caused the accident "had malfunctioned before in a way directly or indirectly related to the accident." *(supra,* p 561.)

Thus, the inference of negligence arose from more than the occurrence of an accident.

Since the facts did not warrant admission of the case to the jury on a theory of res ipsa loquitur and timely objection was taken, the verdict on negligence, which was undifferentiated, cannot stand. *(Toomey v New York City Tr. Auth.,* 10 AD2d 728, *affd* 8 NY2d 970.) In such circumstances, whether the jury's finding was based on a showing of negligence by circumstantial evidence, as to which there is factual support in the record, or on the application of res ipsa, as to which there is not, cannot be determined.

Accordingly, the judgment should be reversed, and the matter remanded for a new trial.