JACQUELINE B. TASHJIAN, Respondent, v STRONG & ASSOCIATES, Doing Business as 11 NORTH PEARL CONDOMINIUM, et al., Appellants, and SCHINDLER ELEVATOR COMPANY et al., Appellants-Respondents. [639 NYS2d 507] —Mercure, J. P.

Plaintiff brought these consolidated actions to recover for personal injuries she sustained on August 2, 1988 when, in the process of exiting an elevator on the 16th floor of an office building in the City of Albany, the heel of her shoe became wedged in the space between the landing and the elevator cab. The theory underlying plaintiff's claims is that her injuries were proximately caused by a misleveling of the elevator, which she asserts came to rest with its floor approximately 2 to 4 inches higher than the 16th floor landing as the result of the negligence of the owner and manager of the property, defendants Strong & Associates, 11 North Pearl Associates and Blake Management Company, Inc. (hereinafter collectively referred to as the owners), and of the entity that contracted to perform maintenance and service on the elevator, alternatively sued as defendants Schindler Elevator Company and Schindler Elevator Corporation (hereinafter collectively referred to as Schindler). Schindler and the owners appeal Supreme Court's order denying their respective motions and cross motions for summary judgment dismissing the complaint against them and granting plaintiff's motion to amend her pleadings to assert the doctrine of res ipsa loquitur. In addition, the owners appeal an order of Supreme Court that denied their motion for summary judgment on their cross claim for indemnification against Schindler.

It is fundamental that defendants may be liable for failure to correct conditions of which they had knowledge or "failure to use reasonable care to discover and correct a condition which [they] ought to have found" (*Rogers v Dorchester Assocs.*, 32 NY2d 553, 559). On their motions for summary judgment dismissing the complaint, the owners and Schindler each submitted competent evidence establishing prima facie that, prior to plaintiff's accident, they received no actual or constructive notice of any defective condition in the elevator. To the contrary, Schindler produced work tickets for a period of three months preceding plaintiff's accident and the deposition testimony of its repair technician, showing weekly maintenance and inspection of the elevator (referred to as elevator No. 3). On each such occasion, the elevator was tested for misleveling and found to perform satisfactorily. During the same time period, the elevator received annual safety checks by both Schindler and the City of Albany and, again, no defective condition was noted. Further, Schindler produced a diary of

telephone calls (referred to as "blotter sheets") it received regarding the functioning of elevators it serviced, and no complaints were made that elevator No. 3 had misleveled. Finally, plaintiff herself testified that she used the subject elevator on a regular basis for a period of three years prior to the accident and never experienced any problems with it. Based upon the foregoing, we conclude that defendants made an ample showing that they had neither actual nor constructive notice of any defective condition in elevator No. 3 such as would make it prone to misleveling (*see, Di Marco v Westinghouse Elec. Corp.*, 170 AD2d 760, 761; *Birdsall v Montgomery Ward & Co.*, 109 AD2d 969, 971-972, *affd* 65 NY2d 913; *Koch v Otis El. Co.*, 10 AD2d 464, 467; *cf., Rogers v Dorchester Assocs.*, *supra*).

In opposition to the motion, plaintiff advanced the theory that defendants were on notice of the dangerous and defective condition of elevator No. 3 because of their knowledge that (1) the building's elevator control room was poorly ventilated and thus prone to excessive temperatures, (2) elevator Nos. 2 and 3 were controlled by a mixture of Otis and Schindler parts, and (3) elevator No. 2 misleveled on a single occasion five days prior to plaintiff's accident. Although the record supports a finding that defendants were aware of all three of the stated conditions or events, there is no probative evidence in the record to support a finding that such knowledge placed defendants on notice of any dangerous condition that contributed to plaintiff's injuries.

The underpinning for plaintiff's factual showing is an affidavit of Samuel Eisenman, a certified elevator inspector. On the issue of excessive temperatures in the room housing the elevator motors and controls, Eisenman states:

"the lack of proper ventilation and/or air conditioning within the machine room caused the machine room to greatly overheat, especially during the summer months * * *

"[and] the build up of heat within the elevator machine room and allowing the overheated condition to persist, will render the elevator mechanism and its levelling devices more apt to fail than similar elevator mechanisms maintained in a properly temperature controlled machine room."

Eisenman addresses the claim concerning the use of heterogeneous parts in the following manner:

"[elevator No. 3] was originally constructed as an Otis Elevator and thereafter converted to contain self-operating switching mechanisms and levelling devices manufactured by the Otis Elevator Company and these systems were coordinated

with the call system which operated [elevator No. 3] and the other [two] cars in the elevator bank by a Schindler system * * *

"[and] when two different elevator manufacturers [*sic*] equipment is co-mingled to operate a single elevator as was undertaken in this case * * * the elevator is more likely to malfunction then [*sic*] a similar elevator which has all parts operating it and controlling its operation that are made by the same manufacturer within the same tolerances."

In our view, there are glaring deficiencies in the opinions expressed by Eisenman. First, his affidavit contains absolutely no foundation for the highly generalized and wholly speculative opinion that a mixture of manufacturer's parts or an "overheated condition" will render an elevator more likely to malfunction (*see, Guldy v Pyramid Corp.*, 222 AD2d 815; *Morrison v Flintosh*, 163 AD2d 646, 648; *Fallon v Hannay & Son*, 153 AD2d 95, 101-102). Second, Eisenman makes no effort to correlate the claimed deficiencies to the subject occurrence. Notably, and fatally, lacking is any opinion of a causal relationship between the claimed deficiencies and the alleged August 2, 1988 misleveling of elevator No. 3. As a final matter, although not necessary for our determination, we also note that defendants countered plaintiff's factual showing with competent expert proof that (1) the Schindler call selection circuitry had nothing to do with leveling or elevator car movement, (2) entirely separate and independent devices controlled the leveling of elevator No. 2 and elevator No. 3, and (3) the elevator control room could not have been subjected to excessive temperatures at 8:40 A.M., when the accident occurred.

Plaintiff having failed to create a genuine factual issue as to defendants' liability (*see, Zuckerman v City of New York*, 49 NY2d 557, 562; *Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065), Supreme Court erred in denying defendants' motions for summary judgment dismissing the complaint. The parties' remaining contentions have been rendered academic.

Crew III, Casey, Yesawich Jr. and Spain, JJ., concur. Ordered that the order entered July 13, 1994 is reversed, on the law, without costs, motions by defendants granted, summary judgment awarded to defendants, and complaint and cross claim dismissed. Ordered that the appeal from the order entered November 15, 1994 is dismissed as academic.