(May 16, 2006)

■ CECILIA MOGILANSKY et al., Appellants, v 250 BROADWAY ASSOCIATES CORP. et al., Respondents. [817 NYS2d 214]—

Order, Supreme Court, New York County (Louis B. York, J.), entered July 14, 2004, which granted the summary judgment motion of defendant 250 Broadway Associates, and directed the dismissal of the complaint, unanimously modified, on the law, to reinstate plaintiffs' claims against defendant Millar Elevator Industries, Inc. (Millar), and otherwise affirmed, without costs.

At approximately 2:50 P.M. on March 22, 2002, plaintiff Cecilia Mogilansky entered one of the elevators on the 16th floor of 250 Broadway, where she worked. Mrs. Mogilansky rode the elevator alone down to the lobby, standing near its doors. When the doors opened, a "seven pound coil"* fell from the elevator, hitting her in the head.

The building owner, 250 Broadway Associates Corp., had contracted with defendant Millar to perform elevator maintenance. Millar was to furnish "Full Master Maintenance" for the 15 elevators at 250 Broadway. This included monthly cleaning and inspection of "door operator controls" and "car door hangers." Millar was also required to check "door closing devices" every six months, and to repair or replace/renew automatic elevator car door parts, including springs. The contract also contained a provision in which Millar agreed to indemnify 250 Broadway for any claim arising out of its negligence.

Gary Welge, a field supervisor for Millar, testified at his deposition that he was dispatched to 250 Broadway on the date of the accident. Welge said he checked the subject elevator and found a spring and chain that had detached from the door. He also opined that the only reason a chain would break in the manner that it had would be from ordinary wear and tear. On the date of the incident, Welge stated he had reported to a building manager that the linkage for the self-closing door had broken and needed to be replaced. He further testified that he was not aware of any problems with the subject elevator prior to this incident.

Welge was asked whether there was a history of problems with this elevator and whether they were recorded in a location site history report. He answered that the site history report showed five calls to Millar in the year preceding this accident, all of which concerned the very elevator in which Mrs. Mogilansky was injured. He stated that the elevator was serviced on March 5, 2002, and that records indicate that the "open SE

---

* The object that Mogilansky described as a "coil" is technically called a spring.

coil" was replaced. Welge testified that the SE coil was an electrical component and was completely different from the spring involved in this case. Welge related that there were no other calls regarding the subject elevator predating Mrs. Mogilansky's accident. He said that routine inspections, which included visual inspections of the spring, were conducted in March 2002. Welge stated that the last inspection had been on March 19, three days before the accident.

Plaintiff and her husband brought this action against 250 Broadway Associates Corp. and Millar. Thereafter, defendant 250 Broadway moved for summary judgment, asserting that it had no notice of the defective or dangerous condition responsible for the accident. 250 Broadway also asked for summary judgment on its cross claims against Millar for contractual and common-law indemnification. Millar opposed only that portion of 250 Broadway's motion which sought summary judgment on the cross claims. In its partial opposition to its codefendant's motion, Millar did not address any of plaintiffs' direct claims against it. Plaintiffs opposed 250 Broadway's motion, asserting that the building owner was on notice that the subject elevator had been malfunctioning.

The IAS court granted 250 Broadway's motion and it dismissed the complaint against both 250 Broadway and Millar. The court stated: "[a]lthough there were some problems with the elevator . . . [it] was repaired on March 6, 2002, after which there were no further complaints from that day to the date of the accident on March 22, 2002. Moreover, 2-3 days before the accident the elevator underwent ordinary maintenance and no problem was found. Without prior notice that there was anything wrong with the elevator at the time of the accident, there can be no finding of negligence." We modify to reinstate plaintiffs' complaint against defendant Millar.

On this appeal, defendant Millar argues that although it made no motion for summary judgment before the IAS court, we should search the record and affirm the dismissal of plaintiffs' claims against it. However, that would be manifestly unfair as plaintiffs had no opportunity to develop a factual record to support the claims against this defendant before the motion court (*Weeks Off. Prods. v Chemical Bank*, 180 AD2d 419, 419-420 [1992]). While plaintiffs' complaint did not expressly make out a cause of action based upon the theory of res ipsa loquitur, in response to defendants' demand for a bill of particulars, plaintiffs specifically stated, among other claims, that they intended to rely on the theory of res ipsa loquitur (*cf. Farmer v Central El.*, 255 AD2d 289, 290 [1998]). At this point in the litigation,

plaintiffs have not had the opportunity to present the facts supporting their res ipsa claim. The extant record is insufficient for the court to determine, as a matter of law, whether res ipsa applies (*see Miller v Schindler El. Corp.*, 308 AD2d 312 [2003]), or whether Millar was otherwise negligent (*see Rogers v Dorchester Assoc.*, 32 NY2d 553, 559-562 [1973]). Concur—Mazzarelli, J.P., Marlow, Williams, Sweeny and Catterson, JJ.