■ MINDY HODGES et al., Respondents, v ROYAL REALTY CORP., Appellant, and SCHINDLER ELEVATOR COMPANY, Respondent. [839 NYS2d 499]—

Order of the Appellate Term of the Supreme Court of the State of New York, First Department, entered July 6, 2006, which affirmed an order, Civil Court, New York County (Saliann Scarpulla, J.), entered July 18, 2005, which, in an action for personal injuries sustained in an elevator accident, denied the motion of defendant-appellant Royal Realty Corp. for summary judgment dismissing the complaint as against it or alternatively awarding it common-law indemnification as against defendant-respondent Schindler Elevator Company, unanimously reversed, on the law, without costs, motion granted and the complaint as

against Royal Realty Corp. dismissed. The Clerk is directed to enter judgment in favor of Royal Realty Corp. dismissing the complaint as against it.

Plaintiff alleges that on August 2, 2000, after she entered an elevator on the building's 14th floor, the doors closed, she heard a loud crash from above and the elevator suddenly started to fall. The emergency brakes attempted to engage at least three times until the elevator came to an abrupt halt on the 10th floor, and plaintiff, as a result, was injured.

The building is owned by the Durst Corporation and managed by defendant Royal Realty Corp. The service contract between Durst and defendant Schindler Elevator Company called for Schindler to maintain the elevators in the building in a proper and safe operating condition, perform periodic inspections, repair all defects and provide on site a full-time elevator mechanic whose sole responsibility was to care for and maintain the building's elevators. Under the contract, Durst, as owner of the premises, retained "possession or control" of the elevators and "normal responsibility and liability as an owner, lessor, lessee, possessor or custodian of the equipment." Durst was also required under the contract to "carefully monitor the equipment and its use and, in the event of a malfunction, operational problem or dangerous condition, to immediately remove the unit from service, erect barriers and post warnings to prevent the use of the equipment."*

Royal argues not only that there is no evidence that it did anything to cause the elevator to malfunction, but also that it did not have any notice, either actual or constructive, of a dangerous condition in the elevator that caused it to fall. Plaintiff responds that it need not address evidence of any such negligence or notice to hold Royal liable for the accident. Instead plaintiff claims that Royal and Schindler exercised such a degree of control over the operation of the elevator that the doctrine of res ipsa loquitur applies, and that all she therefore need show to raise an issue of fact as to Royal's negligence is that the elevator did in fact fall and cause her injury.

While the doctrine of res ipsa loquitur may be invoked against the defendant in an action involving a malfunctioning elevator (*see Miller v Schindler El. Corp.*, 308 AD2d 312 [2003]), it may only be applied if it can be established that: (1) the occurrence, i.e. the sudden and abrupt fall of the elevator, would not ordinarily occur in the absence of negligence; (2) when the eleva-

---

* Royal as managing agent of the premises, is Durst's agent and its responsibilities for the elevator are defined by this contract. Durst was not made a party to these proceedings.

tor fell and caused plaintiff injury it was within the exclusive control of the defendant(s); and (3) nothing plaintiff did in any way contributed to the happening of the event. There is no dispute that such an abrupt and potentially catastrophic event could not have occurred if the elevator was operating properly or that plaintiff in any way contributed to the cause of this accident. What is in dispute is whether Royal exercised such a degree of control over the elevator's operation as to provide a rational basis for finding that the malfunction that caused the elevator to fall occurred as the result of its negligence (*Kambat v St. Francis Hosp.*, 89 NY2d 489, 494 [1997]). In other words, the issue is whether Royal shared exclusive control over the elevators with Schindler to such a degree that its failure to fulfill its responsibilities constitutes a rational explanation for the occurrence of this accident (*see Banca Di Roma v Mutual of Am. Life Ins. Co., Inc.*, 17 AD3d 119, 121 [2005]; *cf. Corcoran v Banner Super Mkt.*, 19 NY2d 425, 432-433 [1967]).

In deciding this issue, one must look to the true nature of Royal's relationship with Schindler in terms of the relative control each exercised over the elevators prior to and at the time of the accident. By contract, all responsibility for the daily operation of the building's elevators was ceded to Schindler. Royal had no role in inspecting, maintaining or repairing the elevators; those duties and their faithful execution were the total and complete responsibility of Schindler by virtue of its contract with Durst (*compare Felder v Host Marriott Corp.*, 276 AD2d 276 [2000]). Schindler not only provided a mechanic on site to handle all service calls and performed all routine and preventative maintenance as well as periodic inspections, it also informed Royal when any additional work on the elevators was needed. Schindler's control was so absolute that the contract expressly provided that Durst could not allow any other entity other than Schindler to "make alterations, additions, adjustments, repairs or replacements" to the elevators. As such, while Royal, as Durst's agent, retained ownership of the elevators, it did not have anything to do with their maintenance or operation which would warrant the conclusion they did something, or failed to do something, that caused this accident. In sum, Royal did not exercise such a degree of control over the building's elevators to allow for the application of res ipsa loquitur to establish its liability for this accident (*see Corcoran v Banner Super Mkt.*, 19 NY2d 425, 432 [1967]; *Burgess v Otis El. Co.*, 114 AD2d 784 [1985], *affd* 69 NY2d 623 [1986]).

Moreover, as plaintiff has not submitted any evidence that Royal had anything to do with the malfunction that caused the

elevator to fall, or had any notice that a dangerous condition existed in their operation, its claims against Royal must be dismissed (*see Santoni v Bertelsmann Prop., Inc.*, 21 AD3d 712 [2005]). Concur—Tom, J.P., Williams, McGuire, Malone and Kavanagh, JJ. [*See* 12 Misc 3d 136(A), 2006 NY Slip Op 51267(U) (2006).]