**Bortugno v Schindler El. Corp.**

2025 NY Slip Op 30172(U)

January 17, 2025

Supreme Court, New York County

Docket Number: Index No. 150623/2013

Judge: Hasa A. Kingo

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. HASA A. KINGO**        PART           **05M**

*Justice*

-------------------------------------------------------------------------------X

NICHOLAS BORTUGNO,

                    Plaintiff,

            - v -

SCHINDLER ELEVATOR CORPATION, MIDLAND
ELEVATOR CO INC,

                    Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 150623/2013 |
| MOTION DATE | 01/14/2025 |
| MOTION SEQ. NO. | 018 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 018) 530, 531, 532, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557, 558, 559, 560, 561, 562, 563, 564, 565, 566, 567, 568, 569, 570, 571, 572, 574, 575, 576, 577, 578

were read on this motion to               SET ASIDE VERDICT       .

Defendants Schindler Elevator Corporation and Midland Elevator Co., Inc. ("Defendants") move this court, pursuant to CPLR § 4404(a), for judgment notwithstanding the verdict or, in the alternative, for a new trial. Specifically, Defendants seek an order: (1) setting aside the jury's verdict in favor of Plaintiffs Nicholas ("Mr. Bortugno") and Josephine Bortugno ("Mrs. Bortugno") (collectively "Plaintiffs"); (2) entering judgment as a matter of law in favor of Schindler Elevator Corporation; (3) ordering a new trial on liability and damages; or (4) reducing the damages awarded for future loss of earnings, pain and suffering, and loss of services. Defendants argue that the jury's verdict was inconsistent, unsupported by evidence, and tainted by erroneous rulings on evidentiary and procedural matters. Plaintiffs oppose the motion in all respects, arguing that the jury's verdict is consistent, supported by substantial evidence, and based on proper application of the law. For the reasons set forth below, the court primarily denies Defendants' motion, upholds the jury's verdict, and finds that the evidence and law fully support the outcome.

## BACKGROUND AND PROCEDURAL HISTORY

This case arises from a January 19, 2012, incident in which Mr. Bortugno sustained injuries to his head when a descending freight elevator gate (Elevator F105) at the James A. Farley Building in Manhattan struck him as he was pushing a cart into the elevator. Plaintiffs alleged that the elevator's warning light and alarm failed to function, rendering the elevator unsafe and causing the accident. Defendant Schindler Elevator Corporation ("Schindler:") was under contract to maintain the elevator, and Midland Elevator Co. ("Midland"), Inc. had previously performed maintenance on it. Plaintiffs claimed Defendants were negligent in failing to ensure the safety of the elevator.

The claims against the premises defendants, including the New York State Urban Development Corporation and Moynihan Station Development Corporation, were dismissed on summary judgment in 2019. The court found those defendants had no notice of any defect in the elevator. However, claims against Schindler and Midland proceeded to trial.

The first trial in 2023 resulted in a hung jury. A retrial was held in November 2024, culminating in a jury verdict in favor of Plaintiffs against Schindler, with no liability found against Midland. The jury awarded Plaintiffs significant damages, reduced by 20% based on comparative negligence attributed to Mr. Bortugno. Defendants now seek to overturn or modify the verdict.

## TRIAL TESTIMONY AND JURY CHARGE

The jury's verdict is strongly supported by the evidence adduced at trial, which was presented in a manner that adhered to the highest standards of legal procedure.

Testimony from Mr. Bortugno established key facts about the failure of the elevator's safety systems. Mr. Bortugno testified that as he was pushing a cart into the elevator, the warning light and alarm—critical safety features designed to prevent such incidents—failed to activate. His credible and consistent account was corroborated by multiple entries in Schindler's maintenance logs, which documented recurring issues with "force discrepancies" and "alignment problems" associated with Elevator F105. The jury reasonably inferred that these unresolved maintenance issues directly contributed to the accident (Trial Tr. 315:5–318:20; 784:3–795:15).

The expert testimony of Patrick Carrajat ("Mr. Carrajat"), a seasoned elevator consultant, further reinforced Plaintiffs' case. Mr. Carrajat explained the industry standards for elevator maintenance and opined that Schindler's repeated failure to address known defects constituted a clear departure from those standards. He identified specific deficiencies in Schindler's inspection and repair protocols, demonstrating how these lapses likely led to the malfunction of the warning systems. His conclusions were based on a detailed review of service records and site inspections, providing the jury with a sound basis for their findings of negligence (Trial Tr. 801:12–809:3).

Moreover, Plaintiffs presented evidence of Schindler's exclusive control over the elevator and its components, a critical element in the application of *res ipsa loquitur*. Maintenance contracts and internal records confirmed that Schindler was solely responsible for ensuring the safety and proper functioning of Elevator F105. This evidence supported the jury's inference that the accident could not have occurred absent Schindler's negligence (Trial Tr. 456:7–458:10).

The court's jury instructions were clear, comprehensive, and entirely consistent with New York law. The charge on *res ipsa loquitur* carefully articulated the doctrine's three elements, emphasizing that the jury could draw an inference of negligence if they found that the accident was of a kind that ordinarily does not occur in the absence of negligence, that Schindler had exclusive control over the elevator, and that Mr. Bortugno's actions were not the sole cause of the incident (Trial Tr. 1123:14–1127:6).

150623/2013   BORTUGNO, NICHOLAS vs. SCHINDLER ELEVATOR          Page 2 of 10
Motion No.  018

2 of 10

[* 2]

Additionally, the jury charge on comparative negligence appropriately framed the jury's task of apportioning fault. Evidence presented at trial suggested that while Mr. Bortugno may not have exercised full caution while entering the elevator, his actions were not the proximate cause of the accident. The jury's allocation of 20% comparative fault reflects a reasoned assessment of the evidence and demonstrates their careful consideration of all relevant factors (Trial Tr. 1221:9–1225:15).

The court's evidentiary rulings further ensured a fair and impartial trial. Defendants' attempts to introduce post-incident repair evidence were properly excluded under New York law, which prohibits the admission of subsequent remedial measures to prove negligence (*see Kaplan v. Einy*, 209 AD2d 248, 252 [1st Dept 1994]). The exclusion of such evidence prevented undue prejudice and maintained the focus on the conditions existing at the time of the accident.

In sum, the trial record demonstrates that the jury's verdict was based on substantial evidence, guided by legally correct instructions, and reached through a fair and impartial process. The trial proceedings adhered to procedural and substantive legal standards, providing a sound basis for upholding the verdict.

## DISCUSSION

### I. Alleged Inconsistent Verdict

Defendants assert that the jury's verdict was internally inconsistent because it found that Mr. Bortugno's negligence was not a substantial factor in causing the accident, yet allocated 20% comparative fault to him.

### A. Failure to Timely Object to Verdict Inconsistency

As a threshold issue, the court notes that Defendants' failure to object to the verdict's alleged inconsistency prior to the discharge of the jury is fatal to their request for a new trial on this basis. Under New York law, a party waives its right to challenge a verdict as inconsistent if it does not raise the issue while the jury is still empaneled, thereby forfeiting the opportunity for the jury to clarify its findings (*see Barry v. Manglass*, 55 NY2d 803, 806 [1981] [holding that failure to object to an allegedly inconsistent verdict before the jury is discharged precludes appellate review of the issue]).

Here, the trial transcript reflects no contemporaneous objection by Defendants regarding the alleged inconsistency of the jury's findings. Specifically, Defendants did not raise this issue before the jury was discharged, thus forfeiting any claim that the verdict should be set aside on this ground. Plaintiffs note, and this court agrees, that had Defendants promptly raised their concerns, the court could have addressed the alleged inconsistency by seeking clarification or further deliberation from the jury. This procedural safeguard, enshrined in New York jurisprudence, ensures that trial courts can correct potential errors at the moment they arise (*see Everding v. Bombard*, 272 AD2d 937 [1st Dept 2000][noting that post-verdict objections must be raised while the jury is still available to avoid waiving the issue]; *see also Arrieta v. Shams Waterproofing, Inc*., 76 AD3d 495, 496 [1st Dept 2000][ "[a] party is required to preserve a claim

**150623/2013   BORTUGNO, NICHOLAS vs. SCHINDLER ELEVATOR**
**Motion No.  018**

**Page 3 of 10**

3 of 10

that a verdict is inconsistent. In order to serve as a predicate for appeal, the issue must be raised before the discharge of the jury so that the trial court may take corrective action to cure the inconsistency, including resubmitting the matter to the jury"]; *Schley v. Steffans*, 79 AD3d 1753, 1753 [1st Dept 2010]["[p]laintiff failed to preserve for our review [her] contention that the verdict is inconsistent because she did not object to the verdict on that ground before the jury was discharged]).

Moreover, the court instructed the jury with precision regarding its obligations to assess fault and causation independently. These instructions, coupled with the detailed verdict sheet, provided a clear framework for the jury's deliberations. Plaintiffs point to testimony establishing that Mr. Bortugno's comparative fault related to his actions in entering the elevator but did not rise to the level of proximate cause of the accident. This distinction was squarely within the jury's province to evaluate, and Defendants' failure to object during this process underscores the propriety of the verdict (Trial Tr. 1221:9–1225:15).

Defendants' failure to raise a timely objection to the alleged inconsistency in the verdict is fatal to their belated application for relief (*see Barry v.*, 55 NY2d 803, *supra*; *Arrieta*, 76 AD3d 495, *supra*). Indeed, Defendants' failure to object prior to the jury's discharge precludes this court from returning the matter to the jury for clarification, thereby waiving the objection.

Defendants' reliance on cases such as *Scarpati v. Kim*, 124 AD3d 866 (2d Dept 2015), is misplaced. In *Scarpati*, the jury returned an inconsistent verdict, was instructed to reconsider, returned a second verdict, and upon polling demonstrated "substantial confusion among the jurors." Here, no such confusion occurred. The jury sent a single note, received re-instruction, and promptly delivered a unanimous verdict without further issue. Moreover, *Scarpati* is not controlling on this court, as it is an Appellate Division, Second Department, authority rather than an Appellate Division, First Department, authority.

Similarly, in *Rodriguez v. F.D.R. Temple Assoc., Inc.*, 24 Misc.3d 110 (Sup. Ct., App. Term, 1st Dept 2009), the trial court improperly reallocated liability after dismissing a defendant, necessitating a retrial. No such judicial intervention occurred here.

In *Allen v. Lowczus*, 118 AD3d 1258 (1st Dept 2014), the plaintiff sought a new trial due to the jury's damages award despite finding her negligence non-substantial. Unlike *Allen*, Defendant here failed to object during trial and only challenges alleged inconsistencies *post hoc*. Appellate Division, First Department, precedents emphasize that new trials on such grounds are warranted only where timely objections were raised, and the trial court improperly denied a request to resubmit the case (*see, e.g.*, *Dubec v. N.Y.C. Hous. Auth.*, 39 AD3d 410 [1st Dept 2007]; *Davis v. New York City Hous. Auth.*, 3 AD3d 356 [1st Dept 2004]). Defendant made no such objection here, requiring denial of its motion for a new trial.

Considering Defendants' procedural default and the substantial evidence supporting the jury's findings, this court finds no basis to disturb the verdict on the ground of inconsistency. Plaintiffs' argument is persuasive, and the case law supports the conclusion that Defendants' failure to object at the appropriate time precludes their current challenge.

150623/2013   BORTUGNO, NICHOLAS vs. SCHINDLER ELEVATOR          Page 4 of 10
Motion No.  018

4 of 10

[* 4]

### B. Misinterpreting the Jury's Findings

Even if Defendants' objection had been timely, their argument misinterprets the jury's findings. The jury's conclusion that Mr. Bortugno's negligence was not a substantial factor relates to the proximate cause of the accident, whereas the apportionment of comparative fault reflects a separate inquiry into whether Mr. Bortugno failed to exercise reasonable care for his safety. The court's jury instructions, based on PJI 2:70, made this distinction clear. Indeed, the sufficiency of the charge on comparative negligence was underscored by testimony showing that while Mr. Bortugno did not check above before entering the elevator, his actions were consistent with expectations given the defective warning system. The jury, therefore, acted within its discretion in attributing partial, but not primary, fault to him. As such, the jury's apportionment of fault and determination of damages were consistent with both the evidence and applicable legal principles.

Notably, New York law permits a jury to assign comparative fault even where the plaintiff's actions were not the proximate cause of the incident (*see Allen v. Lowczus*, 118 AD3d 1258, 1259 [4th Dept 2014]). Additionally, in *Barry v. Manglass*, 55 NY2d 803 (1981), the Court of Appeals affirmed the principle that apportionment of fault can be distinct from substantial causation. The jury's verdict, when viewed as a whole, is consistent and supported by the evidence.

The mere fact that the jury found Mr. Bortugno to be negligent but concluded that his negligence was not a proximate cause of the accident does not render its verdict inconsistent. It is well established that "[a] jury's finding that a party was at fault but that such fault was not a proximate cause of the accident is inconsistent and against the weight of the evidence only when the issues are so inextricably interwoven as to make it logically impossible to find negligence without also finding proximate cause" (*Garrett v. Manaser*, 8 AD3d 616, 617 [2d Dept 2004]).

Where, as here, "there is a reasonable view of the evidence under which it is not logically impossible to reconcile a finding of negligence but no proximate cause, it will be presumed that, in returning such a verdict, the jury adopted that view" (*Membreno v. Roche*, 128 AD3d 782, 783, [2d Dept 2015] *quoting Moffett-Knox v. Anthony's Windows on the Lake, Inc*., 126 AD3d 768, 769 [2d Dept 2015]).

In this case, the jury could have reasonably determined that while Plaintiff was negligent in some respects, such negligence was not a substantial factor in causing the accident. For instance, the jury may have credited Defendant's argument that Mr. Bortugno should have looked upward before entering the freight elevator but concluded that doing so would not have prevented the gate from striking him on the head, given the height of Plaintiff, the configuration of the elevator entrance, and the speed of the gate's descent. Similarly, the jury could have accepted Defendant's assertion that Mr. Bortugno and Rosenberg were negligent in failing to contact Celeste Woods before attempting to use the elevator but properly decided that such negligence was irrelevant to Defendant's failure to inspect and maintain the elevator's warning devices in proper working order.

This court finds that the jury's verdict was not inconsistent. The jury's conclusion reflects a plausible and legally sound reconciliation of the evidence presented at trial. As such, Defendant's motion for a new trial based on alleged inconsistency in the verdict is denied.

### C. Reduction of Damages

The jury, after carefully considering the evidence and testimony presented, allocated 20% comparative fault to Mr. Bortugno. Under New York's comparative negligence law, codified in CPLR § 1411, the award of damages must be reduced in proportion to the percentage of fault attributed to the plaintiff. In this case, the jury awarded the Plaintiffs a total of $7,640,000, which includes compensation for past and future pain and suffering, lost earnings, and other related damages. Applying the 20% reduction for comparative negligence ($1,528,000) results in an adjusted award of $6,112,000.

This reduction appropriately reflects the jury's reasoned assessment that, while Schindler's negligence was the primary cause of the accident, Mr. Bortugno's actions contributed in part to the outcome. The allocation of comparative fault and the resulting reduction in damages are consistent with New York law, which seeks to balance responsibility while ensuring fair compensation.

Plaintiffs further argue, and this court concurs, that the reduction of damages by 20% to account for Mr. Bortugno's comparative fault renders Defendants' request for a new trial moot. Under CPLR § 1411, a plaintiff's recovery is diminished in proportion to their culpable conduct, thereby addressing any equitable concerns arising from the allocation of fault. Courts have consistently held that where damages are properly reduced to reflect comparative negligence, the fundamental purpose of a retrial—to achieve a fair outcome—is obviated (*see Arbegast v Board of Educ. of S. New Berlin Cent. School*, 65 NY2d 161, 166 [1985][noting that comparative fault adjustments resolve disputes regarding proportional liability without necessitating retrials]).

This court emphasizes that the proportional reduction set forth herein reflects the jury's careful deliberations regarding liability and damages. Moreover, this reduction fully aligns with the jury's apportionment of liability and the evidence presented at trial. As a result, any remaining claims of prejudice or inequity have been rectified through the proportional reduction. Defendants' argument for a new trial, therefore, lacks merit because the adjusted damages already embody the jury's carefully deliberated findings and ensure a just result.

The mootness doctrine is particularly applicable where, as here, the central issues raised by Defendants have been resolved through the application of statutory law and the jury's verdict.

As will be discussed in further detail below, Defendants have not demonstrated any remaining credible basis to justify retrial or a setting aside of the jury's verdict.

### II. Lack of Notice

Defendants contend that they had no actual or constructive notice of any defect in the elevator's warning light or alarm. This argument fails to account for the substantial evidence presented at trial. Plaintiffs introduced service records showing prior issues with "force discrepancies" and "gate alignment"—conditions consistent with the malfunction alleged. Testimony from Plaintiffs' expert, Mr. Carrajat, established that the failure of the warning systems

150623/2013   BORTUGNO, NICHOLAS vs. SCHINDLER ELEVATOR        Page 6 of 10
Motion No.  018

6 of 10

was a foreseeable consequence of inadequate maintenance. Constructive notice arises when a defect is visible and apparent and exists for a sufficient length of time to permit discovery and correction (*see Hayes v. Riverbend Hous. Co.*, Inc., 40 AD3d 500, 501 [1st Dept 2007]). Moreover, the Appellate Division, First Department, has held that constructive notice can be imputed where maintenance logs reveal a pattern of unresolved issues, as was the case here (*see Barkley v. Plaza Realty Invs., Inc.*, 149 AD3d 74, 80 [1st Dept 2017]). Schindler's maintenance practices, as documented, failed to address recurring risks, and such omissions were sufficient for the jury to infer constructive notice.

### III.     Applicability of *Res Ipsa Loquitur*

Defendants argue that the doctrine of *res ipsa loquitur* was improperly charged to the jury. This argument is unpersuasive. The doctrine applies when (1) the event is of a kind that ordinarily does not occur in the absence of negligence, (2) the instrumentality causing the injury was within the exclusive control of the defendant, and (3) the plaintiff did not contribute to the cause of the injury (*see Dermatossian v. N.Y.C. Transit Auth.*, 67 NY2d 219, 226 [1986]). Plaintiffs established all three elements: elevator gates do not typically strike individuals absent negligence; Schindler had exclusive control over the elevator's maintenance; and Mr. Bortugno's comparative negligence did not negate Defendants' responsibility. New York courts have consistently held that malfunctioning elevators present a classic scenario for *res ipsa loquitur* (*see Burgess v Otis El. Co.*, 114 AD2d 784, 785 [1st Dept 1985]).

Here, the doctrine was properly applied, and the jury's purported reliance on it was supported by the evidence. Indeed, Plaintiffs' counsel argued, and the jury was properly instructed, that *res ipsa loquitur* permitted an inference of negligence under these circumstances. The court's jury instructions meticulously explained the elements of the doctrine, ensuring the jury understood its applicability (Trial Tr. 1123:14–1127:6).

Plaintiffs' expert, Mr. Carrajat, testified that elevators are highly regulated machines that require rigorous maintenance and safety checks. He explained that the type of malfunction leading to Mr. Bortugno's injury—a descending gate striking an individual entering the elevator—is precisely the kind of accident that does not occur absent negligence (Trial Tr. 801:12–809:3). Furthermore, maintenance records presented at trial revealed prior documented issues with the warning systems on Elevator F105, including force discrepancies and gate misalignments. Plaintiffs argued that these records unequivocally established Schindler's exclusive control over the elevator and its failure to address known safety risks, which directly contributed to the accident.

Defendants' argument that Mr. Bortugno's actions negated the applicability of *res ipsa loquitur* is unavailing. The doctrine does not require the plaintiff to be entirely free from fault; it merely requires that the plaintiff's conduct was not the sole cause of the incident (*see Kambat v. St. Francis Hosp.*, 89 NY2d 489, 495 [1997]). Here, while the jury attributed 20% comparative fault to Mr. Bortugno, this finding does not preclude the application of *res ipsa loquitur*, as the evidence overwhelmingly demonstrated that Schindler's negligence was the primary cause of the accident.

**150623/2013   BORTUGNO, NICHOLAS vs. SCHINDLER ELEVATOR**                        **Page 7 of 10**
   **Motion No.  018**

7 of 10

[* 7]

In sum, the doctrine of *res ipsa loquitur* was correctly charged, supported by substantial evidence, and consistent with established New York law, particularly within the Appellate Division, First Department (*see Aponte v. Bronx Pres. Housing Devel. Fund Corp.*, 202 AD3d 401 [1st Dept 2022][misleveling]; *Carter v. New York City Housing Auth.*, 176 AD3d 605 [1st Dept 2019][unexpected door closing]; *Mogilansky v. 250 Broadway Assoc. Corp.*, 29 AD3d 374 [1st Dept 2006][coil struck plaintiff on head]; *Miller v. Schindler Elev. Corp.*, 308 AD2d 312 [1st Dept 2003][sudden drop]; *Dickman v. Stewart Tenants Corp.*, 221 AD2d 158 [1st Dept 1995] [misleveling]; Burgess v Otis El. Co., 114 AD2d 784 [1st Dept 1985][misleveling]; *Weeden v. Armor Elev. Co., Inc.*, 97 AD2d 197 [1st Dept 1983][sudden drop]; *Trotman v. Precision Elev. Corp.*, 2024 N.Y. Slip Op. 06140 [1st Dept 2024 [where *res ipsa loquitur* applies, proof of notice is not required]). The jury's verdict, to the extent that it may have been predicated on the application of this doctrine, is therefore entitled to deference.

## IV. Exclusion of Post-Incident Repair Evidence

Defendants argue that the exclusion of evidence regarding the lack of post-incident repairs prejudiced their defense. This argument is without merit. Under New York law, evidence of subsequent remedial measures is inadmissible to prove negligence (*see Kaplan v. Einy*, 209 AD2d 248, 252 [1st Dept 1994]). The rationale behind this exclusion is to encourage parties to undertake remedial measures without fear that such actions will be construed as admissions of fault. The court's evidentiary ruling in this regard ensured that the jury's focus remained on the conditions as they existed at the time of the incident.

Plaintiffs argue, and this court agrees, that the exclusion of such evidence did not deprive Defendants of the opportunity to present a full and fair defense. Defendants were able to introduce extensive maintenance records and testimony to support their position that the elevator was properly maintained prior to the incident. Furthermore, testimony from Schindler's own maintenance personnel provided the jury with insights into the company's practices, allowing the jury to assess the adequacy of those practices without considering any post-incident actions.

Case law consistently affirms that the exclusion of post-incident remedial measures does not constitute prejudicial error when other evidence is available to address the issues of maintenance and safety. For example, in *Cruz v. City of New York*, 218 AD2d 546, 548 (1st Dept 1995), the court upheld the exclusion of evidence of subsequent repairs, finding that the jury was sufficiently informed through other admissible evidence. Similarly, in *Rivera v New York City Tr. Auth.*, 54 AD3d 545, 546 (1st Dept 2008), the court emphasized that remedial measures are irrelevant to determining whether negligence existed at the time of the incident.

In the present case, the jury had access to substantial evidence of Schindler's maintenance practices prior to the accident. Plaintiffs introduced records detailing recurring issues with the elevator, including warnings about force discrepancies and gate alignment problems. Expert testimony from Mr. Carrajat further bolstered Plaintiffs' position, as he identified specific deficiencies in Schindler's inspections and repairs (Trial Tr. 801:12–809:3). Defendants' argument is further rendered moot by the fact that, despite the court's pretrial ruling *in limine* excluding post-accident repair evidence, the court ultimately permitted limited testimony on this issue. Specifically, over Plaintiffs' objection, Defendants were allowed to introduce post-accident repair

150623/2013   BORTUGNO, NICHOLAS vs. SCHINDLER ELEVATOR
Motion No.  018

Page 8 of 10

8 of 10

[* 8]

evidence through the testimony of their witness, Mr. Mikolajczyk, and during the cross-examination of Plaintiffs' expert, Mr. Carrajat. This testimony provided the jury with insights into Defendants' maintenance practices following the accident, addressing the very concerns Defendants now raise. Given that such evidence was, in fact, presented to the jury, albeit in a controlled and limited fashion, Defendants cannot now claim prejudice or procedural unfairness based on its exclusion.

The exclusion of additional post-incident repair evidence was particularly appropriate here, as its probative value was minimal compared to its potential to mislead the jury or create undue prejudice. Any inference that the absence of repairs after the accident signified proper maintenance would have been speculative and contrary to the established facts of the case. Accordingly, this court finds that the exclusion of such evidence was both legally correct and essential to preserving the fairness of the trial.

## V.     Damages

Defendants' claim that the damages awarded were excessive lacks merit. The jury's award was supported by expert testimony regarding Mr. Bortugno's lost earning capacity, medical expenses, and pain and suffering. Plaintiffs' economist Debra Dwyer provided detailed calculations of Mr. Bortugno's future earnings, which the jury was entitled to credit. While Defendants criticize the economist's failure to adjust for certain variables, such critiques were fully explored during cross-examination and did not render the damages speculative (*see Barry v. Manglass*, 55 NY2d 803, 806 [1981]). In *Ezzard v One E. Riv. Place Realty Co., LLC*, 129 AD3d 159, 163 (1st Dept 2015), the court emphasized the deference afforded to jury determinations on damages, particularly where supported by expert testimony. The court finds no basis to disturb the jury's carefully considered award.

After a thorough review of the trial record, the evidence presented, and the arguments raised by the parties, the court finds no basis to disturb the jury's verdict. Defendants have failed to demonstrate any error of law or fact warranting judgment notwithstanding the verdict or a new trial.  Accordingly, it is hereby:

ORDERED that Defendants' motion is denied insofar as it seeks to set aside the jury's verdict in favor of Plaintiffs, to enter judgment as a matter of law in favor of Schindler, or to order a new trial on liability and damages; and it is further

ORDERED that Defendants' motion is granted to the extent that the jury's verdict is upheld in all respects, with damages awarded to Mr. Bortugno reduced by 20% ($1,528,000) to reflect Mr.  Bortugno's comparative fault; and it is further

ORDERED that as a result, Plaintiffs' cumulative recovery is adjusted to $6,112,000; and it is further

ORDERED that the Clerk of the Court is directed to enter judgment in Plaintiffs' favor in the amount of $6,112,000, accordingly.

[* 9]

This constitutes the decision and order of the court.

20250117153604HKINGO0068... ...3602C43D491F7D5C8446514B3

__1/17/2025__
__DATE__

__HASA A. KINGO, J.S.C.__

| CHECK ONE: | | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | | GRANTED | X | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

150623/2013   BORTUGNO, NICHOLAS vs. SCHINDLER ELEVATOR
Motion No.  018

Page 10 of 10

10 of 10