JOHN C. EATON, Respondent, *v.* THE NEW YORK CENTRAL
AND HUDSON RIVER RAILROAD COMPANY, Appellant.

**Negligence — injury resulting from unusual and unexplained
occurrence — doctrine of res ipsa loquitur not applicable thereto.**

An unusual occurrence, resulting in an injury, does not of itself raise the
presumption of neglect on the part of a person who is charged with
the performance of a duty.    The accident must be such as, necessarily,
to involve negligence.

Plaintiff, as appears by the evidence in his behalf, was standing on the plat-
form of a station on defendant's road waiting for a freight train to pass.
After the train had passed he was found lying between the tracks and the
platform.    He stated that he did not know what struck him; that after the
locomotive had passed he saw the hazy outline of some object he could
not describe.    No evidence was given showing negligence on the part of
defendant in the management of the train, or from which it might have
been inferred that any of the cars were in a defective condition.    *Held,* on
examination of the facts, that defendant's motion for a nonsuit should
have been granted and that it was error to apply the doctrine of *res ipsa
loquitur*.

*Eaton* v. *N. Y. C. & H R. R. R. Co.*, 125 App. Div. 54, reversed.

(Argued April 5, 1909; decided May 4, 1909.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
March 13, 1908, affirming a judgment in favor of plaintiff
entered upon a verdict and an order denying a motion for a
new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*A. H. Cowie* for appellant.    The evidence did not warrant
the submission of the case to the jury.    (*Perez* v. *Sandrowitz*,
180 N. Y. 397 ; *Johnson* v. *N. Y. C. & H. R. R. R. Co.*,
173 N. Y. 79.)    The rule of *res ipsa loquitur* is not applica-
ble.    (*Benedict* v. *Potts*, 88 Md. 52 ; *Griffen* v. *Manice*, 166
N. Y. 196 ; *Carpenter* v. *B. & A. R. R. Co.*, 97 N. Y. 494 ;
*Cosulich* v. *S. O. Co.*, 122 N. Y. 118 ; *Volkmar* v. *M. R.
Co.*, 134 N. Y. 418 ; *May* v. *B. I. B. Co.*, 43 App. Div. 569 ;
*Allen* v. *Banks*, 7 App. Div. 405 ; *Piehl* v. *A. Ry. Co.*, 30

App. Div. 166; 162 N. Y. 617; *Fink* v. *Slade*, 66 App. Div. 105; *Nolan* v. *B. H. R. R. Co.*, 68 App. Div. 219; *Moran* v. *M. S. S. Line*, 82 App. Div. 489; *Duhme* v. *H. A. P. Co.*, 184 N. Y. 404.)

*Frank C. Sargent* for respondent. The evidence clearly shows the negligence of the defendant. (*Griffen* v. *Manice*, 166 N. Y. 193; *Hogan* v. *M. R. Co.*, 149 N. Y. 22; *Volkmar* v. *M. R. Co.*, 134 N. Y. 418; *Holbrook* v. *U. & S. Ry. Co.*, 12 N. Y. 243.)

GRAY, J. The plaintiff, upon the day he met with the accident, which is the subject of this action against the defendant, was engaged in shipping produce in cars and, at the time, was standing upon the platform of a station of the defendant's road, waiting for a freight train to pass by in order to cross the tracks. His complaint alleged that he was struck upon the head "by some sharp instrument, either of iron or wood, extending from, or hanging to", the train. He testified that the train approached upon the track nearest to the platform and, after the engine and "a couple of cars, or some cars", had passed him, "as he looked at the train, he saw something, the outline he could not exactly describe and he couldn't tell what it was that hit him." Again, he describes himself as standing still, in the middle of the platform, "about half way between the station and the end of the planks", and says, "what struck me I don't know. When I saw the thing that I saw the hazy outline of it, it seemed very close to me. * * * I couldn't say how near it was to me when I saw it, because as I saw it that was the last I can remember. I will swear positively that it was not the hazy outline of the locomotive, because the locomotive had passed me before that occurred." The plaintiff furnished no other evidence of what had caused him the injuries complained of. He was found lying between the tracks and the platform, with his skull fractured by a blow received upon the forehead, leaving a round wound "like a fifty cent piece."

His left hip was, also, bruised. His hat was exhibited and showed a round hole through the front of the crown, as its only damage. From the wound in the head were removed pieces of the hat and a splinter of wood. His son had come upon the platform with him; but he had gone a few feet away and, his back being turned, did not see the accident. The train described was coming from the west and there had about passed the station, at the same time, another train coming from the east. Nor did the plaintiff give any evidence, showing, or tending to show, any negligence on the part of the defendant with respect to the management of the passing train, from which he said his injuries were received; or any evidence from which it might be inferred that some one of the cars may have been in a defective condition; unless, as it is contended, it is permissible from the plaintiff's story of his accident. He claims that the condition of his hat and of the wound in his head corroborates his account.

According to the defendant's evidence, as furnished by the engineer and fireman of the train, as they approached the station, the plaintiff was seen standing on the edge of the platform and, after the train coming in the other direction had passed, to step off, when he was almost instantly struck down by the cylinder head of their engine. Their train was passing at the rate of thirty miles an hour. The head brakeman testified that the train stopped and that he went back along the south side of the train and did not see anything projecting from it. Further evidence was given by the defendant, illustrating the general situation at this station, which is of considerable importance. According to measurements, made by a surveyor, the platform facing the tracks was over seven and one-half feet wide and its edge was distant from the nearest rail nearly five and one-half feet. The plaintiff, therefore, from his account must have been standing about nine feet from the track. To the west of the station platform, and distant 94 feet therefrom, was a mail crane, the post of which stood at a distance from the nearest rail of about four and one-half feet. Still further to the west, and

544 feet distant, was a highway bridge, whose abutment, at the height of six feet from the ground, was about the same distance from the nearest rail as was the station platform. If anything had been projecting from the train during its progress, sufficiently to strike the plaintiff, it must have come in contact with the abutment, or crane. But of that plaintiff offered no evidence. But, however incredible the occurrence, as narrated by the plaintiff, that was an argument to be addressed to the jury. The question presented upon the case is whether there was any evidence, from which it could, legitimately, be inferred that the defendant had failed, in any respect, in the performance of its duty to exercise reasonable and ordinary care that the plaintiff should not be exposed to unnecessary danger; for he was present as of right upon the defendant's platform. There was nothing to explain the possibility of such an occurrence, as the plaintiff attempted to describe, in any defective condition of the freight cars. The mind would be left to speculate upon such possibilities as of a brake rod, or of some part of the planking of a car, springing out of its place; or, equally, of some object caught, and thrown forcibly, from the track, or ground, by the fast revolving wheels of the train. If anything had become displaced upon a car, its displacement must have occurred within the two and one-half seconds, which the train took in covering the distance from crane to platform, and it is reasonable to suppose that it must have been visible. The trial court refused to dismiss the case and submitted it to the jurors for their decision; instructing them that they were "allowed to infer negligence from the happening of the accident." The affirmance by the Appellate Division was by a divided court and our examination of the case leads us to the conclusion that the defendant's motion for a nonsuit should have been granted·and that it was error to apply the doctrine of *res ipsa loquitur*.

This rule, which is so often invoked in these accident cases, was not the declaration of the discovery of some new legal principle, available to a complainant to supplement the deficiency in the required proof of the charge of negligence.

The doctrine, simply, regulates the degree of the proof required under certain circumstances. It was a rule evoked, not from the necessity, but from the reason, of the thing. It is properly invoked in behalf of a case, where the proof of negligence is furnished by the occurrence itself; that is to say, in the act proved to have caused the injury and in the attendant circumstances. In the language of Judge Cullen, in *Griffen* v. *Manice*, (166 N. Y. 188, 193), its "application presents principally the question of the sufficiency of circumstantial evidence to establish, or to justify the jury in inferring, the existence of the traversable or principal fact in issue, the defendant's negligence." In that case, where a person was killed by the fall of the counterbalance weights of an elevator, because of the rope, to which they were attached, having been thrown off of the drum, it was held that "no such accident could ordinarily have occurred, had the elevator machinery been in proper condition and properly operated." There, what caused the injuries was proved and the attendant circumstances were held to warrant the inference of the defendant's neglect in the discharge of the duty, owing to persons invited upon the premises, to maintain a safe elevator for their carriage. With the exercise of reasonable care, such an accident, in the ordinary course of business, could not have happened. It, therefore, spoke for itself, as imputing neglect to the defendant. In this case, the thing that caused the accident was not proved, because not known. If, at most, a guess might have accounted for it, as happening from the swinging out of some misplaced part of a car, how could that furnish a presumption of a want of reasonable care in operating the train? If there was such a temporary displacement, or if there was some forcible discharge of some object from the ground, it may have been a case of inevitable accident. The burden was upon the plaintiff to prove the cause of his injury, or, at least, a state of facts, which would throw the onus upon the defendant of explaining the occurrence. But, so far as the record discloses, the train was properly operated and the conditions, to make such an occurrence reasonably

possible, were negatived by the proof of the situation, which has been adverted to.   The defendant was not required to account for what struck the plaintiff.   An unusual occurrence, resulting in injury, does not, of itself, raise the presumption of neglect on the part of the person who is charged with the performance of some duty.   The accident must be such as, necessarily, to involve negligence.   In *Peck* v. *N. Y. C. & H. R. R. R. Co.*, (165 N. Y. 347), which was an action to recover damages for the burning of a barn, standing near the defendant's tracks, it was held that it was for the plaintiff to affirmatively establish negligence in the condition, or in the operation of, defendant's engine; for which purpose proof of the mere occurrence of the fire was insufficient.   He was not obliged to prove either the specific defect in the engine, or the particular act of misconduct in its operation, constituting the negligence; it was sufficient to prove facts and circumstances from which the jury might fairly infer that the engine was defective in its condition, or negligently operated.   But what was there in this case, in fact, or in circumstances, upon which the jurors might base a determination that there was defect in cars, or negligence in management?   It was not impossible for the accident to have been occasioned by some other cause, than that of some sudden and temporary defect in the condition of a car.   In *Robinson* v. *Consolidated Gas Co.*, (194 N. Y. 37, 40), it was observed, with reference to this rule, "if proof of the occurrence shows that the accident was such as could not have happened without negligence according to the ordinary experience of mankind, the doctrine is applied even if the precise omission or act of negligence is not specified, and even when it does not appear whether the accident was owing to some act done or to some act not done.   It is applied when the inference of negligence is required by the nature of the occurrence.   *   *   *   If, however, proof of the occurrence shows that the accident might have happened from some cause other than the negligence of the defendant, the presumption does not arise and the doctrine cannot properly be applied."

If the theory of the right to maintain such an action is to be observed, then a plaintiff cannot avoid the burden of proving negligence on the part of the defendant, directly, or by circumstances, from which negligence may legitimately be inferred. There was no witness of the plaintiff's accident; nothing happened to the train itself; there was nothing wrong about the cars, according to the defendant's evidence, and there is no other evidence upon the subject, and how the plaintiff was injured remains a subject of pure speculation. The *res*, or the act, was not shown and how can the maxim relied upon be applied, when that is unknown? The injury may as well have been caused by something not connected with the management of the train, as by something in connection with it. Indeed, upon a fair consideration of the surroundings, that seems the more likely. But, whatever was the act causing the injury, if incapable of being shown, the defendant cannot be made liable, in the absence of any proof of negligence, by the application of the rule of *res ipsa loquitur.* It was not an insurer of the plaintiff's safety; it owed him only the exercise of reasonable care while upon its premises.

For these reasons, the judgment should be reversed and a new trial should be ordered; costs to abide the event.

CULLEN, Ch. J., WERNER and HISCOCK, JJ., concur; EDWARD T. BARTLETT, WILLARD BARTLETT and CHASE, JJ., dissent.

Judgment reversed, etc.