■ ESTHER ALLEN, Respondent, v WOODS MANAGEMENT Co., et al., Appellants. — Order, Supreme Court, Bronx County (Patlow, J.), entered November 5, 1980, setting aside a jury verdict in favor of the defendants as against the

---

weight of evidence and ordering a new trial, affirmed with costs to abide the event. Defendants appeal from an order of the Supreme Court setting aside a jury verdict in their favor in a negligence action, and directing a new trial. We affirm for the reasons set forth by the trial court as well as for the additional reasons set forth hereinafter. The plaintiff, an elderly woman, sustained injuries when her arm was caught by the door closing in a service elevator, and the elevator thereafter descending from the ninth to the first floor. In short, the injuries occurred as a result of the precise kind of event that should not occur if an elevator functions properly. The principal factual trial issue was raised by the contention of the defendants that the elevator door may have caught plaintiff's arm at a point where it measured less than 2 inches, and therefore the subsequent movement of the elevator did not violate that section of the New York City Administrative Code which provides that the car door or gate of an elevator shall be considered to be in the closed position where the space does not exceed two inches. Defendants' thesis is based on a circumstantial inference which does not appear to be consistent with a visual inspection of photographs of plaintiff in the hospital which focused on her arm. Nonetheless, considered by itself, the contention raised a factual issue appropriate for a jury determination. When the issue is considered in the light of the totality of the evidence presented at the trial, including most particularly expert evidence submitted on behalf of the defendants, there appears a solid basis for the Trial Judge's conclusion that the verdict was against the weight of the evidence. The defendants' witness, chief engineer for Woods Management Co., testified that the elevator was so constructed that the door would retract, and the elevator would not thereafter move, when the door made contact with an obstruction variously described by him as one and one-quarter to one and one-half inches. Since there is no conceivable evaluation of the evidence that would support the conclusion that plaintiff's arm at any relevant point was one and one-half inches or less, the conclusion is inescapable that the elevator did not function as it was designed to do. Although superficially probative, the evidence submitted by defendants with regard to an examination of the elevator by their technician in the presence of a city inspector a few days after the accident is equally unhelpful to their position on closer analysis. After the mechanic repaired an allegedly unrelated defect, the testimony was to the effect that the elevator door retracted properly when it closed on a wrench measuring one and one-quarter inches. Unless one were to conclude that plaintiff's arm at the point it was pinned was less than one and one-quarter inches under pressure, a finding for which there is no basis in this record, the question presented is why the door retracted appropriately when tested some days after the event and quite obviously did not do so on the day of the accident. No explanation was offered by the defendants for these inconsistent results, much less a plausible explanation. Such an explanation was offered by a qualified expert called by the plaintiff who examined and tested the elevator one month after the event. When he tested the elevator, the door did not function properly, and in fact performed in a manner fully consistent with its operation when plaintiff suffered her injuries. He testified to observing a specific defect in the elevator mechanism that caused the door to misfunction in the manner described. In addition, plaintiff's expert testified to explicit observations confirming that the defect was most likely of long duration. Finally, he gave a detailed explanation as to how the elevator, functioning defectively as he observed it and in the manner described at the time of the accident, could nonetheless have yielded the results reported by the defendants' expert and the New York City inspector. Undoubtedly the jury was entitled not to credit this testimony. However, when it is considered in light of the nature of the event as it indisputably occurred on the occasion of the accident, the fact obvious from the

testimony of defendants' own experts that the elevator must have misfunctioned on that occasion, and the total failure of the defendants to provide an alternative explanation for the apparently inconsistent performance described above, a strong basis exists for the trial court's conclusion that the verdict was against the weight of the evidence. The dissenting opinion focuses on the view that the trial court had inappropriately charged *res ipsa loquitur* and had erroneously relied upon it in the opinion setting aside the jury verdict. Preliminarily it should be observed that a legally sufficient case, indeed a very persuasive case, was presented wholly without regard to that doctrine. In any event, we disagree with the dissenting opinion's analysis of that doctrine as applied to these facts. In *Feblot v New York Times Co.* (32 NY2d 486), the authority principally relied upon in the dissenting opinion, the Court of Appeals specifically distinguished from the holding of that case (pp 495-496) "falling elevator and defective interlock cases" in which the injured plaintiff had "no control whatever over the mechanism of the elevator responsible for the accident." The instant case clearly falls within the exceptions thus delineated to the holding in *Feblot* rather than to the holding itself. Concur — Sandler, Markewich and Lupiano, JJ.

Murphy, P. J., and Kupferman, J., dissent in a memorandum by Murphy, P. J., as follows: Plaintiff sustained injuries to her arm on March 3, 1978 when the inner door of an elevator closed upon it. The case was submitted to the jury under theories of *res ipsa loquitur* and negligence. The jury returned a verdict in favor of both defendants. The trial court set the verdict aside as against the weight of the evidence and ordered a new trial. A jury verdict in favor of a defendant may not be set aside unless it plainly appears that the evidence so preponderates in favor of the plaintiff that the verdict could not have been reached on any fair interpretation of the evidence (*Ladson v New York City Housing Auth.*, 31 AD2d 611). In setting aside this verdict, the trial court gave significant weight to its belief that the evidence in this case warranted the application of the doctrine of *res ipsa loquitur*. This doctrine should not have been charged in this proceeding nor should it have been relied upon as a basis for setting aside the verdict in favor of the defendants. The doctrine was not applicable because the defendants did not have exclusive control over the elevator at the time of the occurrence (*Feblot v New York Times Co.*, 32 NY2d 486, 495, 496). The plaintiff was in a position to exercise some control over the elevator and the elements surrounding the incident by (i) pushing the "stop" button and/or (ii) removing her body from the path of the inner door. To the extent that plaintiff had this control over her own destiny, it cannot be said that the defendants were in total control of the mechanism that injured the plaintiff. Therefore, if the plaintiff was entitled to recover, she was required to demonstrate that the defendants were negligent in the maintenance of the elevator. At this point, cognizance should be taken of the regulatory rules that govern this situation. A violation would be some evidence of the defendants' negligence. Subdivision 4 of section 51 of the Multiple Dwelling Law provides: "4. Every elevator installed after such date shall be equipped with a gate with an automatic device approved by the department to prevent the normal operation of such elevator unless such gate is closed". Section C26-1800.2 of the New York City Administrative Code incorporates Reference Standard RS 18. Reference Standard RS 18-1, in turn, incorporates USASI 17.1 1965 — USA Standard Safety Code for Elevators, Dumbwaiters, escalators and Moving Walks. Rule 111.7c of the safety code provides in pertinent part: "Car doors or gates shall be considered to be in the closed position under the following conditions: 1. For horizontally sliding doors or gates, when the clear open space between the leading edge of the door or gate and the nearest face of the jamb

does not exceed two (2) inches". Rule 112.3a permits the elevator doors to exert up to 30 pounds of pressure. Conflicting evidence was presented at trial as to whether the elevator was in a state of disrepair at the time of the occurrence. Several days after the incident, defendant Staley's expert, Milano, inspected the elevator. After adjusting the door for a recycling problem, Milano tested the door and determined that it reopened upon contact with an obstruction one and one-quater inches from the jamb. The city inspector, Hellander, found no violation at the time of that inspection. Plaintiff's expert, Carr, did not examine the elevator until more than one month after the occurrence. Carr stated that he found electrical tape over the split-bar mechanism; he further stated that the tape prevented the door from recycling when it hit an obstruction. Carr also testified that the "stop" button was inoperative at the time of his inspection and that the elevator door exerted in excess of 50 pounds of pressure. Based on this conflicting evidence, the jury could have justifiably concluded that the elevator was operating properly on March 3, 1978. Moreover, negligence cannot be inferred from the circumstantial fact that the elevator moved with the plaintiff's arm locked between the inner door and the jamb. The jury could have believed that the inner door functioned within the parameters set by the safety code but that the door compressed upon a portion of the plaintiff's arm that was less than two inches in diameter. The jury could have additionally found that, because of the plaintiff's advanced years, she did not have the strength to extricate her arm from the 30 pounds of pressure exerted by the door. There was sufficient evidence in the record to support the jury's implicit conclusion that the plaintiff, fumbling with her grocery bag, unfortunately caused her own injuries when she failed to notice the fully operative door closing upon her. For the reasons stated, the order of the Supreme Court, Bronx County (Patlow, J.), entered November 5, 1980, which set aside the verdict in favor of the defendants and ordered a new trial, should be reversed, and the verdict should be reinstated.