(December 11, 2007)

■ GLORIA IANOTTA, Appellant-Respondent, v TISHMAN SPEYER PROPERTIES, INC., et al., Respondents-Appellants, and NEW YORK ELEVATOR COMPANY, Respondent. TISHMAN SPEYER PROPERTIES, INC., Third-Party Plaintiff-Respondent, v NEW YORK ELEVATOR COMPANY, Third-Party Defendant-Appellant. [852 NYS2d 27]—

Order, Supreme Court, New York County (Richard F. Braun, J.), entered May 16, 2006, which, in an action against the owner and managing agent of an office building (collectively, Tishman) and an elevator maintenance company (NY Elevator) for personal injuries sustained when the doors of an elevator unexpectedly closed on plaintiff, insofar as appealed from as limited by the briefs, granted NY Elevator's cross motion for summary judgment dismissing the complaint as against it, granted Tishman's motions for summary judgment to the extent of finding NY Elevator conditionally liable to Tishman for contractual indemnification and dismissing the cause of action asserted against Tishman denominated as "negligence," and denied Tishman's motions with respect to the cause of action asserted against it denominated as "negligence/res ipsa loquitur," modified, on the law, to reinstate the cause of action asserted against Tishman denominated as "negligence," dismiss the cause of action asserted against Tishman denominated as "negligence/res ipsa loquitur," and to reinstate the cause of action for negligence asserted against NY Elevator, and otherwise affirmed, without costs.

The amended complaint contains three causes of action: (1) "negligence" against Tishman, (2) "negligence/res ipsa loquitur" against Tishman, and (3) "negligence" against NY Elevator. The motion court dismissed (1), sustained (2), and dismissed (3) after noting that res ipsa loquitur was not pleaded against NY Elevator.

Plaintiff fails to raise an issue of fact as to whether defendants had notice of the alleged defective condition of the elevator in which she was injured, where it does not appear that the incidents noted in the elevator service report log on which plaintiff relies "were of a similar nature to the accident giving rise to this lawsuit" and "were caused by the same or similar contributing factors" (*Chunhye Kang-Kim v City of New York*, 29 AD3d 57, 60-61 [2006]; *Mitchell v New York Univ.*, 12 AD3d 200, 201 [2004]). However, the facts warrant application of the

doctrine of res ipsa loquitur (*see generally Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 226-227 [1986]), where plaintiff testified that the elevator doors were open for a second or two before she entered the elevator right behind her coworker and that another coworker had to pry the doors open to free her, and the safety edge on the elevator was not a rubber bumper that plaintiff could have touched or put pressure on to cause the doors to retract but a device that used infrared beams to detect the presence of passengers (*cf. Feblot v New York Times Co.*, 32 NY2d 486 [1973]; *Graham v Wohl*, 283 AD2d 261 [2001]; *see Stone v Courtyard Mgt. Corp.*, 353 F3d 155, 158 [2003] [distinguishing *Dermatossian*, unlike a bus' grab handle that the public is invited to use, "the public did not 'generally handle' the motor, micro-processor, sensors, or control box (for the hotel's automatic door that closed on the plaintiff), each of which was either embedded in doorframes or otherwise out of the public's normal reach as they passed through the open doors"]). Thus, as between defendants and the members of the public passing through the elevator doors without access to these mechanisms designed to make the doors retract, " 'the greater probability [of responsibility for the alleged malfunction] lies at defendant's door' " (*Stone*, 353 F3d at 158, quoting *Dermatossian*, 67 NY2d at 227).*

We modify to reinstate the "negligence" cause of action, against Tishman, and dismiss the "negligence/res ipsa loquitur" cause of action, simply to clarify that without a cause of action for negligence there is no viable cause of action to which to apply the doctrine of res ipsa loquitur (*see Abbott v Page Airways*, 23 NY2d 502, 512 [1969] [res ipsa loquitur is not a separate theory of liability but merely "a common-sense application of the probative value of circumstantial evidence"]). We also modify to reinstate the complaint as against NY Elevator since "neither plaintiff's failure to specifically plead res ipsa loquitur nor the allegation of specific acts of negligence . . . constitutes a bar to the invocation of res ipsa loquitur where the facts warrant its application" (*Weeden v Armor El. Co.*, 97 AD2d 197, 201-202 [1983]; *see also Abbott*, 23 NY2d at 512 [a plaintiff generally cannot be precluded from relying on res ipsa once evidence of negligence has been introduced]).

---

* Contrary to the argument of the dissent, our decision in *Santoni v Bertelsmann Prop., Inc.* (21 AD3d 712 [2005]) does not compel a different result. The issue in *Santoni* involved the propriety of the denial of a motion for summary judgment based upon lack of notice of the defective condition. We reversed, holding that plaintiff's evidence was not sufficient to defeat defendants' motions. Here, we also found plaintiff's evidence on the question of notice insufficient for similar reasons.

The motion court correctly granted conditional summary judgment to Tishman on its cross claim for contractual indemnification against NY Elevator in the absence of any showing of actual negligence on Tishman's part, and where, under their exclusive, full-service contract, NY Elevator assumed responsibility for the maintenance, repair, inspection and servicing of the elevators, and agreed to indemnify Tishman for any injuries arising out of and resulting from the performance of that work (*Ortiz v Fifth Ave. Bldg. Assoc.*, 251 AD2d 200 [1998]). NY Elevator's assertion that Tishman failed to follow its own consultant's recommendation to upgrade certain elevator equipment was countered by the consultant, who showed that he never recommended upgrading the component that plaintiff's expert claims had failed. Concur—Mazzarelli, J.P., Sullivan and Sweeny, JJ.

Catterson, J., dissents in a memorandum as follows: I respectfully dissent because I believe that this case is indistinguishable from our holding in *Santoni v Bertelsmann Prop., Inc.* (21 AD3d 712 [2005]), and that the doctrine of res ipsa loquitur cannot cure the deficiencies in the plaintiff's proof. I concur with the majority's conclusion that res ipsa cannot exist independently of proof of some negligence. (*Abbott v Page Airways*, 23 NY2d 502 [1969].) The record, however, does not establish any negligence on the part of the landlord and so the doctrine should not be applied.

Res ipsa permits a jury to draw the inference of negligence from the circumstance of an occurrence when the plaintiff can establish that: (1) the event is of a kind that ordinarily does not occur in the absence of someone's negligence, (2) it was caused by an agency or instrumentality within the exclusive control of the defendant, and (3) it was not due to any voluntary action or contribution on the part of the plaintiff. (*Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 226 [1986].)

In pursuit of res ipsa, the plaintiff contends that the elevator door mechanisms that must necessarily have failed include "an imbedded laser-light door safety device, motion sensor, control box, micro-processor, pressure sensor, and/or other related door mechanisms," i.e., mechanisms that "were not open or available to her or to other members of the general public who used Elevator No. 16." In this way, the plaintiff seeks to distinguish *Feblot v New York Times Co.* (32 NY2d 486 [1973]) and *Graham v Wohl* (283 AD2d 261 [2001]), which the defendants contend hold that res ipsa is inapplicable to elevator door-strike cases.

In *Feblot*, the elevator door was equipped with a rubber safety edge bumper. The door suddenly closed on the plaintiff. The Court of Appeals found that the plaintiff had as much control

over the operation of the elevator's doors as the defendant did, if not more, because she was the one who activated the mechanism which controlled their operation. Moreover, she was the one who determined when and how and under what circumstances she would enter the elevator. (*Feblot*, 32 NY2d at 496.) The Court found that even if the doors started to close on her, the plaintiff: "still had it within her power to cause them to instantly reopen automatically by merely touching the rubber safety edge on the inside of the door with her hand, as countless people entering and leaving elevators routinely do every day when the door of an automatic self-service door starts to close before they are completely inside or outside the elevator, as the case may be." (*Id.* at 496.)

In *Graham,* this Court found that the plaintiff's version of the incident, accepted as true, did not rule out the possibility that her injury was caused by her own voluntary actions because she chose when to enter the elevator and apparently was not watching the door when she entered. According to her deposition testimony, her companion, who was at her side and closer to the closing door, was able to step out of its way. In addition, the plaintiff did not claim that she made any attempt to put pressure on the door's safety bumper such as might have caused the door to retract. (*Graham,* 283 AD2d at 261.)

*Feblot* and *Graham* do not announce a categorical bar to applying res ipsa in elevator door-strike cases. Exclusivity of control depends on the particular facts of each case. (*See Stone v Courtyard Mgt. Corp.*, 353 F3d 155 [2003].) In *Stone,* relied upon by the plaintiff, the Second Circuit held that res ipsa was applicable where the plaintiff was injured by the malfunction of an automatic door at the hotel; not an elevator door. The district court granted summary judgment to the hotel and the company that manufactured and installed the door and repaired it when needed on the ground that the exclusive control prong of res ipsa had not been sufficiently established. The plaintiff claimed that the mechanisms, one or more of which would have necessarily failed, were the control box, the motor that operated the door, the motion detector, and/or the presence sensor.

The Second Circuit reversed, distinguishing *Dermatossian* (67 NY2d at 227), in which the plaintiff, as he stood up to get off a city bus, struck his head on a defective "grab handle" that was projecting straight down from the ceiling of the bus instead of at the customary 45-degree angle. The Court of Appeals in that case held res ipsa inapplicable, on the ground that "[t]he proof did not adequately exclude the chance that the handle had been damaged by one or more of the defendant's passengers who

were invited to use it." (*Id.* at 228.) In *Stone*, the Circuit Court found that, unlike the grab handle in *Dermatossian* which was "continuously available for use by [bus] passengers" (*Dermatossian*, 67 NY2d at 228), "the public did not 'generally handle' the motor, micro-processor, sensors, or control box at issue in [*Stone*], each of which was either embedded in doorframes or otherwise out of the public's normal reach as they passed through the open doors" (*Stone*, 353 F3d at 158), and that "as between Marriott and the many persons passing in and out of the entrance to the Hotel every day without access to these mechanisms, 'the greater probability [of responsibility for the alleged malfunction] lies at defendant's door.' " (*Id.*, quoting *Dermatossian*, 67 NY2d at 227.)

In my view, this approach abrogates the long-standing principle that the plaintiff is required to nonetheless demonstrate that there is sufficient "circumstantial evidence of elevator door malfunction . . . to permit the inference of negligent maintenance as to some mechanical device controlling the operation of the door over which only the defendant has control." (*Feblot*, 32 NY2d at 498 [Breitel, J., concurring].)

In the instant case, the plaintiff resorts to the invocation of res ipsa rather than putting forward *any* proof as to the mechanical malfunction that is alleged to have caused the accident. This is nothing more than resorting to the mere happening of an accident as proof of negligence; a position that has had no support in New York law for more than a century. (*See e.g. Eaton v New York Cent. & Hudson Riv. R.R. Co.*, 195 NY 267 [1909].)

The unsworn expert report submitted by the plaintiff in opposition to the motions contains nothing but vague conclusions that the negligence consisted of either failure of "monitoring the elevator companies [*sic*] work" or failure to "maintain the safe edge door system to mandated code requirement."* There is no empirical evidence supporting either conclusion. As such, the expert's opinion is nothing more than unsworn, and thus inadmissible, speculation. Res ipsa simply cannot rest upon such flimsy evidence.

---

* The only physical deficiency noted by the expert during an on-site inspection of elevator 16 in July 2005, four years after the accident, was that the door closed with 32 pounds of torque, two pounds in excess of the design closing pressure. The expert utterly failed to explain the significance of a mere two-pound deviation four years later.