■ JOAN CRAWFORD et al., Respondents, v CITY OF NEW YORK, Defendant, and PETROCELLI ELECTRIC CO., INC., Appellant. [863 NYS2d 11]—

Order, Supreme Court, New York County (Eileen A. Rakower, J.), entered March 16, 2007, which, to the extent appealed from, denied defendant Petrocelli's motion for summary judgment dismissing the complaint and cross claims against it, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.

The complaint alleges that on March 31, 2003, at ap-

proximately 12:30 P.M., plaintiff Crawford was standing on the corner of East Broadway and Catherine Street in Manhattan when, without warning, a traffic signal pole fell over and struck her on the head. The complaint further alleges that Petrocelli breached its contract with the City by failing to properly maintain the pole, and that plaintiffs will rely on the doctrine of res ipsa loquitur to establish Petrocelli's negligence.

In moving for summary judgment, Petrocelli argued that it had neither actual nor constructive notice of the allegedly dangerous condition. Specifically, Petrocelli argued that its contract with the City required it to perform maintenance on traffic signal poles "only upon notification of a defective condition from the City," and that it was not obligated to search for traffic signals in need of repair. With reference to this specific signal pole, Petrocelli's project manager submitted an affidavit stating that there were no calls or notifications from the City during the two-year time period prior to the incident.

Lester Berkowitz, a Petrocelli repairman, replaced two lamps on adjacent poles at the intersection in question on February 3, 2002. He performed a visual inspection of all the poles at the intersection on that date and found no indication of any visibly broken parts of the base on any of them.

Berkowitz also did a visual inspection of all the poles when he returned to the intersection on March 22, 2003, to follow up on a repair job started by another repairman. This inspection did not reveal anything unusual about any of the poles.

On the date of the incident, Ronald Campbell, a Petrocelli employee, responded to the intersection and inspected the downed pole. He found the "mats and studs" in good condition, and that they did not need to be replaced. Campbell and other Petrocelli repairmen stated that the only way a traffic pole could fall over was from one heavy impact or numerous light impacts from vehicles.

In opposition, plaintiffs contended that the inspection by Berkowitz was inadequate and asserted the existence of questions of fact as to whether Petrocelli had constructive notice of the dangerous condition. Plaintiffs argued res ipsa loquitur and submitted an affidavit of an expert who opined that the most probable reason the pole fell was that it was never properly installed. Noting that the base of the pole showed no damage, the expert stated that the pole was never properly secured to the anchor bolts on the concrete foundation. All the securing features related to the pole were located inside the base, and not visible from the outside of the pole. He also observed that there were no indications of trauma or other damage to the

base or the pole, indicating that nothing like a car or truck struck the pole causing it to fall.

In reply, Petrocelli argued that it had not installed the pole, which was probably done in the 1920s or 1930s, and that plans for traffic signals at that intersection had last been revised in 1975, some eight years prior to Petrocelli's obtaining the maintenance contract. Lastly, Petrocelli argued that res ipsa loquitur did not apply because plaintiffs could not establish that it had exclusive control of the subject pole, inasmuch as the public and fire department had "unfettered access to the instrumentality."

The IAS court denied the motion for summary judgment, finding that although Petrocelli did not have actual or constructive notice of any defect in the pole, plaintiffs raised issues of fact as to the applicability of res ipsa loquitur, since Petrocelli was the "only known party who had access to the internal structure of the pole" where all mechanisms to secure the pole are located.

In order to submit a case to a trier of fact on the theory of res ipsa loquitur, a plaintiff must establish the event to be (1) of a kind that ordinarily does not occur in the absence of someone's negligence, (2) caused by an agency or instrumentality within the exclusive control of the defendant, and (3) not due to any voluntary action or contribution on the part of the plaintiff (*Corcoran v Banner Super Mkt.*, 19 NY2d 425, 430 [1967]).

The first and third prongs were clearly established. It is the issue of exclusivity of control of the instrumentality that is troubling in this case.

We do not accept Petrocelli's argument that the only way a pole will fall is from one large or many smaller impacts over time. Its own witnesses stated there was no damage to the external base of the pole or indication that it had been struck by anything at any time. Nor do we accept Petrocelli's argument that the Fire Department's call box attached to the pole negates the concept of exclusive control. Petrocelli presented no evidence that the Fire Department had any access to the internal mechanism of the pole.

Exclusivity, as it applies to res ipsa loquitur, is a relative term. "It does not require the elimination of all other possible causes of the incident" (*Banca Di Roma v Mutual of Am. Life Ins. Co., Inc.*, 17 AD3d 119, 121 [2005]) but simply "a rational basis for concluding that 'it is more likely than not' that the injury was caused by defendant's negligence" (*Kambat v St. Francis Hosp.*, 89 NY2d 489, 494 [1997]). "Nor does the doctrine require sole physical access to the instrumentality causing the injury, which can be applied in situations where more than one defendant can

exercise exclusive control" (*Banca Di Roma*, 17 AD3d at 121). Control of the internal workings of an object satisfies the "exclusive control" element (*see Ianotta v Tishman Speyer Props., Inc.*, 46 AD3d 297 [2007]).

However, there should be a connection between exclusive control of the instrumentality and the incident in question. In *Ianotta*, for example, the internal mechanisms on the elevator doors which caused them to retract were certainly within the exclusive control of defendants, who periodically inspected and serviced the elevators in the building where the injury took place. The defendant elevator maintenance company had a duty, pursuant to its contract with the building owner, to periodically inspect and perform routine maintenance on the elevators in the building. Plaintiff's expert opined that the reason the pole fell here was that it was never properly secured when it was first installed. This installation long predated Petrocelli's contract with the City. Plaintiff did not present any evidence that Petrocelli had performed, or was required to perform any maintenance work on the subject pole. There is no proof that Petrocelli was required to perform visual or any other inspections of other poles at intersections when it was called to make a repair on a particular pole. The mere fact that Petrocelli is the only party to this action with access to the internal mechanisms of the pole is not sufficient to meet the requirements of exclusivity of control, absent some showing that it had an obligation to inspect or maintain those mechanisms without direction from the City.

Simply put, there is no showing of any negligence on the part of Petrocelli. Without a viable cause of action for negligence, there can be no viable cause of action to which to apply the doctrine of res ipsa loquitur (*Ianotta*, 46 AD3d at 299). Concur— Mazzarelli, J.P., Friedman, Buckley, Sweeny and Renwick, JJ.