[49 NYS3d 105]

CHRISTINE BARKLEY, Appellant, v PLAZA REALTY INVESTORS INC. et al., Respondents.

First Department, March 7, 2017

### APPEARANCES OF COUNSEL

*Alpert, Slobin & Rubenstein, LLP*, Garden City (*Lisa M. Comeau* and *Morton Alpert* of counsel), for appellant.

*McGaw, Alventosa & Zajac*, Jericho (*Joseph Horowitz* of counsel), for Infinity Elevator Co., respondent.

*Mischel & Horn, P.C.*, New York City (*Scott T. Horn* and *Naomi M. Taub* of counsel), for Plaza Realty Investors Inc. and others, respondents.

### OPINION OF THE COURT

Manzanet-Daniels, J.

Plaintiff was struck by the door of a service elevator in a building owned by defendant Plaza Realty and managed by defendant Infinity pursuant to an agreement with the owner. Plaintiff, a tenant in the building, was injured when the door of the elevator forcibly closed upon her as she was attempting to enter the elevator, striking her on the right side of her body, and propelling her to the ground. Plaintiff observed that the inner and outer doors of the elevator were separated; she testified that only one of the doors hit her. She pressed the button to exit the elevator and the doors went back into position. Plaintiff testified that she had experienced a similar problem

with the same elevator the week before. At that time, the door "slammed" into her laundry cart as she was entering the elevator. She notified the doorman of the prior incident.

Infinity's service manager described the elevator in question as having a single-slide door, meaning that it had an outside and inside door that moved in tandem when the elevator was operating properly. The movement of the doors was controlled by a door operator and controller located on top of the elevator car. The elevator also had an electric eye on the edge of the car door that would detect if the door encountered an obstacle, and cause the door to retract. The electric eye was not "foolproof," but was "pretty close." There was no rubber edging on the moving door of the elevator. The service manager identified possible causes of a fast-closing door as a resistor or diode malfunction or a malfunction in the door operator.

Infinity's service manager testified that the inner and outer doors would not have moved separately in the manner described by plaintiff in the absence of a malfunction. The evidence showed that Infinity had in fact repaired a problem with the door operator controller the very day before the accident. The service manager described the elevator equipment as being "on its last legs," and in need of replacement. The elevators in the building were approximately 30 years old.

Plaintiff sought to have the case submitted to the jury on a theory of res ipsa loquitur. Plaintiff also asked the trial court to charge section 78 of the Multiple Dwelling Law, pursuant to which an owner has a nondelegable duty to maintain the premises in safe condition. The trial court refused to charge either res ipsa or Multiple Dwelling Law § 78. The court found that plaintiff's failure to offer expert testimony precluded her from establishing that she did not contribute to the happening of the accident, and that the event was of a kind that ordinarily does not occur in the absence of negligence. The court found that the evidence supported the conclusion that the elevator was within defendants' exclusive possession and control.

The court refused to admit into evidence an elevator log that multiple witnesses testified was kept contemporaneously and in the ordinary course of business and which detailed multiple problems with the service elevator. The log indicated, inter alia, that in the months preceding the accident the service elevator had been stuck on various floors; that the door was not opening on various floors; that the elevator had been stuck and unleveled on the 30th floor; that the elevator had been

stuck on the 22nd floor, with the door staying open; and that on April 2, 2008, the door "slamm[ed] hard." Plaintiff took exception to the court's rulings.

The jury returned a verdict unanimously finding that neither defendants nor plaintiff had been negligent in connection with the happening of the accident. Plaintiff's motion to set aside the verdict was denied, and this appeal ensued. We now reverse and remand for a new trial.

Res ipsa loquitur is an evidentiary doctrine which "permits the inference of negligence to be drawn from the circumstances of the occurrence" when a plaintiff can establish that (1) the event is of a kind that ordinarily does not occur in the absence of negligence; (2) the event was caused by an agency or instrumentality within the exclusive control of defendant; and (3) the event was not caused by the plaintiff's actions (*Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 226 [1986]).

> "To rely on res ipsa loquitur a plaintiff need not conclusively eliminate the possibility of all other causes of the injury. It is enough that the evidence supporting the three conditions afford a rational basis for concluding that 'it is more likely than not' that the injury was caused by defendant's negligence" (*Kambat v St. Francis Hosp.*, 89 NY2d 489, 494 [1997]).

The doctrine of res ipsa loquitur has frequently been applied in cases involving elevator malfunctions, including those involving doors which unexpectedly closed upon and injured plaintiffs while attempting to enter and exit an elevator (*see e.g. Ianotta v Tishman Speyer Props., Inc.*, 46 AD3d 297, 298-299 [1st Dept 2007] [res ipsa applicable in a case in which elevator door with an electric eye unexpectedly closed upon the plaintiff, even in the absence of prior incidents of a similar nature noted in the service log]; *see also Rogers v Dorchester Assoc.*, 32 NY2d 553, 557-559 [1973] [testimony that an elevator door had malfunctioned in the six months preceding the plaintiff's accident sufficient circumstantial evidence to permit a jury to permit the inference of negligent inspection and repair as against the elevator maintenance company]).

As we noted in *Ianotta*, "[A]s between defendants and the members of the public passing through the elevator doors without access to the[ ] mechanisms designed to make the doors retract, the greater probability [of responsibility for the alleged malfunction] lies at defendant's door" (46 AD3d at 299 [internal quotation marks omitted]).

■ Plaintiff was injured attempting to enter the elevator car when the door forcibly closed and struck her, knocking her to the ground. The elevator door did not have a rubber bumper, but operated via an electric eye, located on the edge of the door, that would cause the door to retract if it encountered something in its path. Plaintiff also testified that the inner and outer doors did not close in tandem, which the service manager identified as a malfunction. As in *Ianotta*, an unexpectedly closing door that fails to detect the presence of someone entering is not the type of event that ordinarily occurs in the absence of negligence, and the accident could not have been the result of an action on the part of plaintiff (*id.*; *see also Allen v Woods Mgt. Co.*, 86 AD2d 530, 531 [1st Dept 1982] [plaintiff's injuries were the result of the type of event that should not occur when an elevator functions properly where the plaintiff's arm was caught by the door closing, and the car thereafter descended from the 9th to the 1st floor]; *Stone v Courtyard Mgt. Corp.*, 353 F3d 155, 161 [2d Cir 2003] [plaintiff's injury, which occurred while walking through automatic doors, " 'suggests a malfunction which in turn suggests neglect' "]).

The service manager's testimony and other proof adduced at trial established that the operation of the door was reflective of a malfunction; that the mechanism in question (i.e., the electronic eye and door operator controller) was not accessible to persons using the elevator; there had been multiple problems with the elevator, including the same problem encountered by plaintiff, which had necessitated a service call and repairs the day before the accident; and that the elevator equipment was at the end of its useful life.

The evidence further showed that nothing plaintiff did or did not do contributed to the accident. There is no merit to defendants' argument that plaintiff somehow caused the accident by "angling toward the direction in which the doors were opening" or by "trying to beat the elevator door." For one, defendants fail to show how walking through the door at an angle could have affected the operation of the doors. The service manager testified that the elevator was equipped with an electric eye designed to retract if it encountered something in its path. It is undisputed that plaintiff did not have access to the mechanism that controlled the door, which was located atop the elevator, distinguishing this case from others involving rubber-edged doors (*compare Feblot v New York Times Co.*, 32 NY2d 486 [1973] [involving an elevator with a rubber edge door, not an

electric eye sensor as here]; *Narvaez v New York City Hous. Auth.*, 62 AD3d 419, 420 [1st Dept 2009] [res ipsa inapplicable where elevator had a safety edge bumper the public could touch to open the doors, and someone inside the elevator may have inadvertently pressed the door close button], *lv denied* 13 NY3d 703 [2009]; *Graham v Wohl*, 283 AD2d 261 [1st Dept 2001] [res ipsa inapplicable where the plaintiff did not claim that she put any pressure on the door's safety bumper in order to cause the door to retract, and testified that she was able to free herself from a door closing with " 'medium' force"]).

The proof showed that plaintiff merely walked through a door that was designed to open automatically and not close until she was over the threshold, and to detect her presence in the path of the door.

Defendants' argument that the element of exclusive control was not established is similarly without merit. The mechanism of injury related to the electronic eye and the door operator and controller located atop the car, which were inaccessible to the general public and in the exclusive control of defendant owner/managers and the elevator repair company. As such, the doctrine of res ipsa loquitur is applicable.

The trial court erred in refusing to instruct the jury regarding the owner's nondelegable duty under Multiple Dwelling Law § 78. A building owner's duty under the statute extends to elevator maintenance and repair (*see Bonifacio v 910-930 S. Blvd.*, 295 AD2d 86, 91 [1st Dept 2002]). The court's refusal to charge section 78 erroneously led the jury to believe that the owner's negligence could only be predicated on its actual or constructive notice of an elevator problem.

Plaintiff was further prejudiced by the trial court's refusal to admit the elevator logbook into evidence as a business record under CPLR 4518 (a). The doorman testified that the log was a record made and kept in the ordinary course of business in which problems and complaints with the elevator would be notated. He further testified that he was under a business duty to make such entries. The building superintendent similarly testified that the log was required to be kept and was kept in the ordinary course of business, that it was accurate when made, and that entries were made contemporaneously. Plaintiff having satisfied the criteria for admission as a business record, the trial court erred in failing to admit the log into evidence.

The error could not be said to have been harmless, since the exclusion of the log prevented the jury from fully learning

about, and having access during deliberations to, relevant evidence establishing the nature and extent of the problems with the service elevator.

In light of the above, it is unnecessary to reach plaintiff's further argument that the verdict was against the weight of the evidence.

Accordingly, the judgment of the Supreme Court, New York County (Nancy M. Bannon, J.), entered September 21, 2015, after a jury trial, in favor of defendants, should be reversed, on the law, without costs, the complaint reinstated, and the matter remanded for a new trial.

SWEENY, J.P., ACOSTA, MAZZARELLI and WEBBER, JJ., concur.

Judgment, Supreme Court, New York County, entered September 21, 2015, reversed, on the law, without costs, the complaint reinstated, and the matter remanded for a new trial.